### BELL v. WARD.

Court of Appeals of Kentucky.
Oct. 12, 1951.

870

Julius Leibson, Louisville, for appellant.

Joseph Stopher of Davis, Boehl, Viser & Marcus, Louisville, Louis Jull, Louisville, for appellee.

SIMS, Justice.

For convenience the parties will be referred to as they appeared in the trial court. Plaintiff sued defendant for $20,660 damages that the petition averred she sustained by reason of inhaling ammonia gas while a customer in Besten & Langen's store in Louisville, which she contends defendant negligently permitted to escape from a refrigerator condenser it was removing from the basement of the store. The jury returned a verdict for defendant and plaintiff seeks a reversal because: 1. The verdict is palpably against the weight of the evidence; 2. the court should have directed a verdict in her behalf, leaving to the jury only the amount of the damages.

The accident happened between 2 and 3 o'clock in the afternoon of March 29, 1948, while plaintiff was on the second floor of the store, and while four workmen of defendant were purging ammonia gas from a condenser in a refrigerator in the basement preparatory to removing it to defendant's shop for repairs. At the time plaintiff was 55 years old and a substitute teacher in the colored schools in Louisville. When the fumes reached the second floor plaintiff became frightened and hysterical, refused to leave the building by way of the elevator and was removed through a window by firemen and taken to a hospital, where she remained an hour or two. She produced lay and medical proof that as a result of inhaling the ammonia fumes she was confined to her bed for a month; that over a period of eighteen months she incurred a large doctor's bill; that she is now suffering from chronic bronchitis and that it is "very probable" her injuries are permanent.

On the other hand, defendant's proof shows neither plaintiff's illness nor chronic bronchitis could have been caused from inhaling fumes from the small amount of gas which escaped from the condenser. The four employees of defendant, who were removing the condenser, testified that the fumes which escaped from it were negligible and they were in the store and basement all afternoon and hardly noticed the fumes and suffered no ill effects. These witnesses were corroborated by J. A. Dusch, Batallion Chief First District of the Louisville Fire Department, who in answer to an emergency call was in the store and basement and took charge of removing the condenser therefrom after the accident.

Our problem is to determine whether or not the court should have directed a verdict for plaintiff under the res ipsa loquitur doctrine as contended by plaintiff, leaving to the jury only the question of damages.

Plaintiff did not know how the accident happened and she introduced as a witness, Richard Clark, one of defendant's workmen assisting in purging the condenser of ammonia. He and three other workmen, Os-

car Fransman, Reuben Stewart and Jasper Cull, were engaged in removing the condenser, which was cylindrical, 18 inches in diameter, 5 feet long and weighed between 700 and 1000 pounds, from a concrete emplacement on the basement floor after they had unbolted it from the concrete. Just as they were taking hold of the condenser to lift it on a dolley, it rolled over about two inches, broke off a valve out of which flowed from one-half to a gallon of refrigerator oil which was saturated with ammonia.

On cross-examination, Clark testified that when he and Fransman came to the basement about 1:30 Cull and Stewart had evacuated the ammonia from the condenser through a hose into water, and "he double checked the thing to make certain that it was open to atmospheric pressure to see that no ammonia was left". He left the valves open on the condenser for 30 minutes and could detect no ammonia fumes. Just as he and the other three workmen put their hands on the condenser to lift it onto the dolley, it rolled over an inch or two and broke off a nipple on the end of which was a valve, and this released about one-half gallon of oil which had been trapped in the bottom of the condenser. Water was put on the oil immediately to neutralize the fumes which were slight. Clark further testified it was not normal for this oil to be in the condenser and he was not expecting it; that the method used was the usual one for evacuating gas from an ammonia refrigerator condenser.

Fransman corroborated Clark that the usual and customary procedure was followed in evacuating ammonia from this condenser, and that a small amount of gas will stay dormant in oil as long as the oil is stationary, but when the oil is released the gas comes out. This oil ran out "in several split seconds".

Stewart, who had had 10 or 12 years experience in this character of work, testified they pumped the ammonia down three times, then closed the valves between the compressor and the condenser, attached a hose to the latter and drained off the ammonia for around five hours and then applied heat to the condenser with an Ace

torch. The heat was to evaporate and expel any remaining ammonia. They left the valves open for 10 minutes and could detect only a slight odor of ammonia. Thereupon, they closed the valves and the cylinder rolled over, broke a nipple and the oil ran out.

Jasper Cull testified he had had 21 years experience in refrigerator work and this is the first time he ever saw where oil had leaked from the crankcase of the compressor into the condenser, and he did not know how it got there. He purged the condenser until it showed no pressure, then pumped it down to the vacuum and then "purged it off back up to the zero pressure. I did this 4 or 5 times. Then I applied heat to it to be sure all the gas would be out of the condenser before it was removed for 2 or 3 hours". The heat of the torch he applied was 2200 degrees Fahrenheit. Cull further stated that he and the other workmen followed the customary and prescribed method of purging ammonia from a condenser of this type.

Plaintiff chiefly relies upon Droppelman v. Willingham, 293 Ky. 614, 169 S.W.2d 811, and Lewis v. Wolk, 312 Ky. 536, 228 S.W.2d 432, 16 A.L.R.2d 974, as supporting her contention that under the res ipsa rule she was entitled to a directed verdict as to defendant's liability. True, the court in the Droppelman case directed a verdict in favor of plaintiff, leaving to the jury only the amount of damages it should award. But there, the facts and circumstances attending the accident were susceptible of but one inference—negligence on the part of the driver. As was said in the opinion, it was not necessary to invoke the res ipsa rule. There is a clear statement of the rule in New St. L. & Calhoun Packet Corp. v. Pennsylvania R. Co., 302 Ky. 693, 194 S.W.2d 977, and in Lewis v. Wolk, 312 Ky. 536, 228 S.W.2d 432, and it is not necessary to again set it out here.

It was said in the Packet case, the degree of care is for the court, but whether care was exercised in discharging a duty, is generally for the jury. Plaintiff made out a prima facie case under the res ipsa rule when she proved gas escaped

from the condenser which was under the exclusive control of defendant. The inference of negligence arose when ammonia fumes permeated the whole store and it was incumbent upon defendant to explain it away and exonerate himself. This he attempted to do by introducing convincing proof that his workmen were not negligent in purging the ammonia from the condenser. Manifestly, under defendant's proof plaintiff was not entitled to a directed verdict.

Under the rule that one is not required to guard against every risk that he can conceive as possible but only against what he can forecast as probable, defendant insists he was entitled to a directed verdict because his workmen could not have foreseen that oil was in the condenser, citing such cases as Watral's Adm'r v. Appalachian Power Co., 273 Ky. 25, 115 S.W.2d 372; Fredericks' Adm'r v. Kentucky Utilities Co., 276 Ky. 13, 122 S.W.2d 1000, 131 S.W.2d 469; Dixon v. Kentucky Utilities Co., 295 Ky. 32, 174 S.W.2d 19, 155 A.L.R. 150.

In the unusual circumstances of this case where defendant purged this condenser during business hours when his workmen knew that even a small quantity of escaping fumes might excite and so frighten patrons of the store as to cause a panic, and where his employees allowed the condenser to roll over and break a valve which released oil contaminated with ammonia, we think the trial judge properly submitted the case to the jury. Defendant's evidence, though convincing, was not conclusive on the question of his negligence. See the Lewis case, 312 Ky. 536, 228 S.W.2d 432, 16 A.L.R.2d 974, and the Packet case, 302 Ky. 693, 194 S.W.2d 977.

■ The evidence is in direct conflict as to whether plaintiff's condition was the result of the ammonia fumes and while defendant's evidence may not be conclusive on the question of his negligence, it is sufficient to sustain the verdict that his employees were not negligent in the manner in which they purged the condenser of ammonia.

The judgment is affirmed.