**Theresa Gail LEWIS, Administratrix of the Estate of Brenda Carol Helton, and Don Helton, Appellants,**

**v.**

**B & R CORPORATION, d/b/a Save-A-Lot, and Ford Motor Company, Appellees.**

**No. 2000-CA-001297-MR.**

Court of Appeals of Kentucky.

Sept. 7, 2001.

John Crockett Carter, Harlan, KY, for Appellants.

Catherine C. Hadden, Ashland, KY, for Appellee, B & R Corporation.

Before HUDDLESTON, KNOPF and TACKETT, Judges.

## OPINION

HUDDLESTON, Judge.

Theresa Gail Lewis, Administratrix of the estate of Brenda Carol Helton, and Don Helton (hereinafter collectively referred to as "Lewis") appeal from a summary judgment granted to B & R Corporation, d/b/a Save–A–Lot,[1] on their complaint for wrongful death involving the death of Brenda Carol Helton in a one-car vehicular accident. We affirm.

On the afternoon of June 4, 1998, Brenda Helton went alone to a Save–A–Lot grocery store in Harlan, Kentucky. She parked her 1988 Ford Mustang on the front row, perpendicular to the front entrance of the store in a parking area designated for handicapped patrons. To the rear of her vehicle was the rest of a 20–foot parking area and a 38–foot grass embankment with an 18% grade that was parallel to Industrial Park Drive. After completing her shopping, Brenda Helton got into her vehicle and started the engine. Shortly thereafter, she placed the trans-

---

1. Although Ford Motor Company is named as an appellee, this appeal addresses only the summary judgment granted B & R Corporation, d/b/a Save–A–Lot.

mission in reverse and the vehicle suddenly accelerated at a high rate of speed. The car crossed the parking area, the grass embankment, Industrial Park Road, another level 35–foot grass embankment, and a short five-foot drop-off into the Cumberland River, where it landed on its roof, upside-down in the river. Brenda Helton was rescued by several witnesses and a city police officer. She was taken to the local hospital in a coma, but died the next day after being transferred to a regional hospital in Knoxville, Tennessee, without having regained consciousness.

Kentucky State Police Officers Kenneth Crider and Michael Cornett were called to the scene and conducted an investigation. Officer Crider took photographs of the scene and prepared an accident report after speaking with several witnesses and Helton's family. Officer Cornett, who had training in accident reconstruction, prepared a diagram of the area with corresponding distance measurements indicating the path of the vehicle. Officer Crider learned that Brenda Helton was suffering from Huntington's disease or chorea, a muscular, neurological condition, and that complaints had been filed with the Department of Human Resources about her driving ability. One witness stated that the car's wheels were spinning just before it started moving in reverse at a high rate of speed.

On June 2, 1999, Theresa Lewis, Brenda Helton's daughter and administratrix of her estate, and Don Helton, Brenda Helton's husband, filed a wrongful death complaint against B & R Corporation, d/b/a Save–A–Lot, and Ford Motor Company. In the complaint, the appellants alleged B & R breached several duties it owed Brenda Helton related to her status as a handicapped person. They further alleged that

as a proximate result of B & R's failure to comply with its duties, Brenda Helton had been fatally injured.[2] The complaint listed the following duties owed by B & R to its handicapped patrons:

(a) To comply with all provisions of the Kentucky Revised Statutes regarding handicap[ped] persons and persons with physical disabilities.

(b) To reasonably protect patrons from unreasonable risks of harm while engaged in reasonably foreseeable activities.

(c) To provide its handicap[ped] business patrons with reasonably safe premises for the use of the patrons.

(d) To discover dangerous conditions that create an unreasonable risk of harm to handicap[ped] patrons and to correct or otherwise eliminate risk of harm to them.

(e) To maintain the premises in such a condition so that a patron will not be exposed to an unreasonable risks [sic] of harm.

(f) To provide safe guards [sic] and preventive measures to protect handicap[ped] patrons with physical disabilities from an unreasonable risk of harm.

(g) To make timely inspections of the premises used by its handicap[ped] patrons and discover and eliminate and/or warn of any conditions that create an unreasonable risk of harm to them.

(h) To use whatever means the defendant has available to it to eliminate unreasonable risk of harm.

(i) To lay out, construct, design, and otherwise present the premises to its handicap[ped] patrons so that they will not be exposed to an unreasonable risk of harm.

---

**2.** The complaint also alleged that the 1988 Ford Mustang was defective resulting in an

unexpected sudden acceleration of the vehicle that contributed to Brenda Helton's death.

(j) To otherwise use ordinary care to protect and provide a safe environment and premise [sic] for its handicap[ped] patrons with a physical disability.

On June 22, 1999, B & R served its first set of interrogatories and request for production of documents on the appellants.[3] In its interrogatories, B & R asked Lewis to state in detail each and every statute, regulation or case which she contended imposed each of the duties alleged in the complaint and state "every fact upon which you intend to rely to prove the alleged violation of each separate duty." It also asked Lewis to state whether she intended to call an expert witness to testify, to state the subject matter of any expert's testimony, and to provide a summary of the grounds for the expert's opinions. In December 1999, the appellees took the depositions of Theresa Lewis, Officer Crider, and Rhonda Bowers, a witness to the incident. Also in December, Lewis served B & R with answers to its first set of interrogatories and request for admissions. In March 2000, the appellees took the deposition of Don Helton.

On February 16, 2000, B & R filed a motion for summary judgment arguing that Lewis had failed to identify any duty B & R breached which could have caused or contributed to the accident. On the same day, Ford filed a motion for a trial date and order assigning discovery deadlines. On March 17, 2000, the circuit court held a hearing on the motions during which appellants' attorney stated that B & R had breached various provisions of the Americans with Disabilities Act (ADA) regulations and that he would produce an engineering expert to support the allegations in the complaint. After the hearing, the circuit court set a March 2001 trial

date with a pretrial conference in September 2000, and required Lewis to identify all of her expert witnesses by August 1, 2000. The court stated that a cut-off date for discovery would be considered at the pretrial conference.

On April 7, 2000, Lewis filed a response to B & R's motion for summary judgment. She asserted that B & R's breach of federal and state law on handicapped parking had created an unreasonably dangerous condition. She said that the handicapped parking spaces were too close to a steep drop-off and that the design of the parking spaces did not provide reasonable access for handicapped patrons. Attached to the response was an affidavit by Don Helton stating that the handicapped parking spaces were located on a steep grade, that they were not located to provide the shortest route of travel to the building's entrance, and that there was insufficient room to maneuver a vehicle safely. On April 19, 2000, B & R filed a reply to the response denying the assertion that it breached any duty of care to the victim and challenging several factual statements in the response. Attached to the reply were the police accident report, several photographs of the scene, and a copy of the ADA regulations cited by Lewis in her response.

On April 21, 2000, the court conducted a hearing on the motion for summary judgment. B & R argued that Lewis failed to identify a sufficient legal or factual basis for her claim. Lewis stated that B & R Corporation breached a general duty to exercise reasonable care by creating a dangerous risk to handicapped patrons entering and exiting the parking lot. The court granted the motion stating Lewis did

---

**3.** On June 25, 1999, Ford also served its first set of interrogatories and request for produc-

tion of documents on the appellants.

not present facts showing the breach of any duty owed to Brenda Helton by the store.

Lewis contends she presented sufficient evidence showing that the design of the Save–A–Lot parking lot violated the owner's duties to its handicapped patrons and was a cause of Brenda Helton's death. Although the complaint tends to merge the issues, it appears to raise claims based on common law premises liability and negligence per se. She cites to KRS 198B.260(2), the Kentucky Building Code, and the Americans with Disabilities Act as sources for establishing the requirements for handicapped parking at commercial businesses. Lewis asserts that there was a genuine issue of material fact sufficient to preclude summary judgment for B & R.

We begin with a general review of the standards for summary judgment. The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." [4] The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor.[5] The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." [6] The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." [7] While the Court in *Steelvest* used the word "impossible" in describing the strict standard for summary judgment, the Supreme Court later stated that that word was "used in a practical sense, not in an absolute sense." [8] Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*.[9]

Lewis's complaint is based on the legal theories of negligence per se and premises liability, which are two sub-categories of general negligence law. In order to state a cause of action based on negligence, a plaintiff must establish a duty on the defendant, a breach of the duty, and a causal connection between the breach of the duty and an injury suffered by the

---

4. *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996); *Palmer v. International Ass'n of Machinists & Aerospace Workers*, Ky., 882 S.W.2d 117, 120 (1994); CR 56.03.

5. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480–82 (1991); *Leslie v. Cincinnati Sub–Zero Products, Inc.*, Ky.App., 961 S.W.2d 799, 804 (1998).

6. *Steelvest*, 807 S.W.2d at 482. *See also Hubble v. Johnson*, Ky., 841 S.W.2d 169, 171 (1992); *Hibbitts v. Cumberland Valley Nat'l Bank & Trust Co.*, Ky.App., 977 S.W.2d 252, 253 (1998).

7. *Steelvest*, 807 S.W.2d at 480. *See also Commonwealth, Natural Resources and Environmental Protection Cabinet v. Neace*, Ky., 14 S.W.3d 15, 20 (2000).

8. *Perkins v. Hausladen*, Ky., 828 S.W.2d 652, 654 (1992). *See also Welch v. American Publishing Co. of Kentucky*, Ky., 3 S.W.3d 724 (1999).

9. *See Scifres*, 916 S.W.2d at 781; *Estate of Wheeler v. Veal Realtors and Auctioneers, Inc.*, Ky.App., 997 S.W.2d 497, 498 (1999); *Morton v. Bank of the Bluegrass and Trust Co.*, Ky. App., 18 S.W.3d 353, 358 (1999).

plaintiff.[10] The causal connection or proximate cause component traditionally was composed of two elements: cause-in-fact and legal or consequential causation.[11] Cause-in-fact involves the factual chain of events leading to the injury; whereas, consequential causation concerns the concepts of foreseeability and the public policy consideration on limiting the scope of responsibility for damages.[12] In Kentucky, the cause-in-fact component has been redefined as a "substantial factor" element as expressed in Restatement (Second) of Torts § 431.[13] The scope of duty also includes a foreseeability component involving whether the risk of injury was reasonably foreseeable.[14]

While general negligence law requires the existence of a duty, premises

10. *Grisham v. Wal–Mart Stores, Inc.*, 929 F.Supp. 1054, 1056 (E.D.Ky.1995)(citing *Mullins v. Commonwealth Life Ins. Co.*, Ky., 839 S.W.2d 245, 247 (1992)); *Helton v. Montgomery*, Ky.App., 595 S.W.2d 257, 258 (1980).

11. *See, e. g., F.D.I.C. v. Barton*, 233 F.3d 859, 863 (5th Cir.2000); *Talkington v. Atria Reclamelucifers Fabrieken BV (Cricket BV)*, 152 F.3d 254, 264 (1998). *See also Gerebenics v. Gaillard*, Ky., 338 S.W.2d 216, 219 (1960)("To constitute proximate cause, an act must be such that it induced the accident and without which the accident would not have happened."); *Spivey v. Sheeler*, Ky., 514 S.W.2d 667, 672 (1974)("In determining proximate cause, an injury growing out of an act of negligence, the rule is the injury must be the natural and probable consequence of the act of negligence; that is, such a consequence as under the surrounding circumstance of the case might and ought to be foreseen by the wrongdoer as likely to flow from his act.")

12. *Id. See also Ohio Cas. Ins. Co. v. Commonwealth, Dept. of Highways*, Ky., 479 S.W.2d 603 (1972); *United Fuel Gas Co. v. Thacker*, Ky., 372 S.W.2d 784 (1963).

13. *Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980). As noted in *Deutsch*, the discussion of "proximate cause" in many cases has been confusing and "defies precise definition." *Id.* at 143. Under the Restatement approach, liability arises from the existence of negligence and a "legal cause." *See* Restatement (Second) of Torts § 430. The Restatement does not follow the traditional analysis for proximate cause. *See* Dan B. Dobbs, *The Law of Torts* (2001); David W. Robertson, *The Common Sense of Cause in Fact*, 75 Tex. L.Rev. 1765 (1997). It places the foreseeability component under the analysis for determining duty as a part of negligence, rather than under the concept of "legal cause." *See* Restatement (Second) of Torts § 281 and § 435. The traditional approach created confusion by including a foreseeability component in both the scope of the duty and proximate cause analysis. A review of the case law indicates that Kentucky courts have not fully embraced the Restatement (Second) approach to causation analysis. *See, e.g., Grayson Fraternal Order of Eagles v. Claywell*, Ky., 736 S.W.2d 328 (1987); *Waldon v. Housing Auth. of Paducah*, Ky.App., 854 S.W.2d 779 (1993); *Isaacs v. Smith*, Ky., 5 S.W.3d 500 (1999)(mixing foreseeability with discussion of duty, substantial factor, and proximate cause).

14. *See, e.g., Fryman v. Harrison*, Ky., 896 S.W.2d 908 (1995); *Standard Oil Co. v. Manis*, Ky., 433 S.W.2d 856 (1968); *Commonwealth, Dept. of Highways v. Widner*, Ky., 388 S.W.2d 583 (1965). While the cases do not specifically discuss any differences in the foreseeability analysis for purposes of determining duty and causation, the former appears to concern the foreseeability of harm or risk generally, while the latter concerns the foreseeability of the consequences or specific injury in the given case. *See., e.g., Bolus v. Martin L. Adams & Son*, Ky., 438 S.W.2d 79, 81 (1969)("It is not necessary, to impose liability for negligence. that the defendant should have been able to anticipate the precise injury sustained, or to foresee the particular consequences or injury that resulted. It is enough that injury of some kind to some person could have been foreseen."); *Adams v. Feck*, Ky., 303 S.W.2d 287, 289 (1957)("Proximate cause is that cause which leads to, and which might be expected to have produced, a given result."). *But see Eaton v. Louisville & N.R. Co.*, Ky., 259 S.W.2d 29(1953)(it is not necessary that precise form of injury should be anticipated as part of proximate cause).

liability law supplies the nature and scope of that duty when dealing with tort injuries on realty. Under common law premises liability, the owner of a premises to which the public is invited has a general duty to exercise ordinary care to keep the premises in a reasonably safe condition and warn invitees of dangers that are latent, unknown or not obvious.[15] Similarly, statutes, ordinances, regulations and building codes may create a duty subject to liability as negligence per se.[16] A negligence per se claim "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care."[17]

■ While it is unquestioned that violations of statutes constitute negligence per se, that statement is coextensive with the requirement that the violation "must be a substantial factor in causing the result." *Britton v. Wooten*, Ky., 817 S.W.2d 443, 447 (1991). However, the mere violation of a statute does not necessarily create liability unless the statute was specifically intended to prevent the type of occurrence which has taken place. Not all statutory violations result in liability for that violation. The violation must be a substantial factor in causing the injury and the violation must be one intended to prevent the specific type of occurrence before liability can attach.[18]

■ Generally, the issues of the standard of care and the existence of a duty are legal questions; whereas, the breach of a duty and causation are factual issues.[19] However, where only one reasonable conclusion can be reached, a court may decide the issue of causation as a matter of law.[20]

■ Lewis states in her brief that Save–A–Lot maintained its customer parking spaces in a condition that subjected handicapped patrons to an unreasonably dangerous situation. She asserts that the parking spaces "were located on a steep grade and were very, very close to a steep

**15.** See *Johnson v. Lone Star Steakhouse & Saloon, Inc.*, Ky.App., 997 S.W.2d 490 (1999); *Rogers v. Professional Golfers Ass'n of America*, Ky.App., 28 S.W.3d 869 (2000); *Steiden v. Kroger Co.*, Ky., 483 S.W.2d 146 (1972).

**16.** See *Isaacs v. Smith*, supra, n. 13; *Blue Grass Restaurant Co. v. Franklin*, Ky., 424 S.W.2d 594 (1968); *Bennett v. Parkway Professional Center, Inc.*, Ky., 507 S.W.2d 694 (1974); *Nett v. Zellars*, Ky., 353 S.W.2d 379 (1961).

**17.** *Real Estate Marketing, Inc. v. Franz*, Ky., 885 S.W.2d 921, 927 (1994)(quoting *Atherton Condominium Apartment-Owners Association Board of Directors v. Blume Development Co.*, 115 Wash.2d 506, 799 P.2d 250 (1990); *Carman v. Dunaway Timber Co., Inc.*, Ky., 949 S.W.2d 569, 570 (1997)(Administrative regulation defines relevant standard of care if person injured is member of class intended to be protected by the regulation and the injury resulted from event regulation designed to prevent)).

**18.** *Isaacs*, supra, n. 14 at 502. See also *Blue Grass Restaurant Co.*, supra; *Milliken v. Un-*

ion Light, Heat & Power Co., Ky., 341 S.W.2d 261 (1960); *Laughlin v. Lamkin*, Ky.App., 979 S.W.2d 121 (1998).

**19.** See, e. g., *Mullins v. Commonwealth Life Ins. Co.*, Ky., 839 S.W.2d 245, 248 (1992)(existence of duty is issue of law); *Sheehan v. United Services Automobile Ass'n*, Ky.App., 913 S.W.2d 4, 6 (1996)(same); *New St. L. & Calhoun Packet Corp. v. Pennsylvania R. Co.*, Ky., 302 Ky. 693, 194 S.W.2d 977, 982 (1946)(determination of standard of care is legal issue and whether care was exercised in discharge of duty is jury question); *Bell v. Ward*, 242 Ky. 869, 871 (1951)(same); *Eichstadt v. Underwood*, Ky., 337 S.W.2d 684, 686 (1960)(causation and contributory negligence ordinarily jury questions); *Stanley v. Caldwell*, Ky., 274 S.W.2d 383 (1954)(same).

**20.** See *Grayson Fraternal Order of Eagles v. Claywell*, supra, n. 12; *O.K. Tire Store No. 3, Inc. v. Stovall*, Ky., 392 S.W.2d 43, 44 (1965); *Adkins v. Greyhound Corp.*, Ky., 357 S.W.2d 860, 862 (1962).

bank or drop-off.... There was not enough room to safely maneuver a vehicle from the handicap[ped] parking spaces without being subject to the risk of going over the bank. On June 4, 1998, as she was negotiating this dangerous condition of the parking lot, Brenda Helton, decedent, plunged over the bank. She was killed. The unreasonably dangerous condition of the premises was a contributing cause of her death."

Lewis cites to the investigation by Officers Crider and Cornett and the affidavit of Don Helton in support of her allegations. A review of the police accident report and photographs of the scene taken by Officer Crider totally belie these assertions. The diagram of the scene prepared by the police indicates that Helton's vehicle traveled approximately 35 feet across the parking lot, 38 ½ feet across a grass embankment, 23 feet across Industrial Park Drive, 36 feet across a second grass embankment and 5 feet down a steep drop-off into the Cumberland River. The first grass embankment had an 18% grade, but the parking lot had only a gradual slope. Brenda Helton parked in the handicapped spaces near the store entrance, not the embankment, and was approximately 25 feet from the beginning edge of the embankment. She unarguably had sufficient room within the parking lot to maneuver without encountering the embankment.

In addition, the witnesses and physical evidence indicate that Helton's vehicle accelerated quickly at the very beginning and continued on a straight course at a high rate of speed without any indication that she attempted to apply the brakes. The placement of the parking spaces was not a cause-in-fact of the accident and it was not reasonably foreseeable that the placement of the parking lot adjacent to a sloped embankment would pose a risk to patrons or that a handicapped patron would be injured by driving her vehicle into the river. Lewis did not present sufficient evidence to create a material issue of fact on causation involving the design of the parking lot because it was not a substantial factor in causing the accident and it was not reasonably foreseeable that the design created a risk of injury from falling into the river. Therefore, whether expressed in terms of duty or causation, B & R was entitled to judgment on the legal theory of premises liability.

■ Lewis also refers to several regulations under the ADA dealing with the design of parking spaces and accessibility to public buildings by handicapped individuals.[21] She contends the handicapped parking spaces at Save–A–Lot did not comply with the guidelines with respect to an adequate access aisle,[22] accessible route,[23] accessible space,[24] running slope,[25]

21. *See* 36 CFR Part 1191, Appendix A. KRS 198B.260 provides for building code regulations facilitating access by persons with disabilities and coordination with the federal Americans with Disabilities Act guidelines.

22. "Access Aisle. An accessible pedestrian space between elements, such as parking spaces, seating, and desks, that provide clearances appropriate for use of the elements." *See id.* Definitions, Section 3.5.

23. "Accessible Route. A continuing unobstructed path connecting all accessible elements and spaces of a building our facility.... Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps, and lifts." *Id.*

24. "Accessible Space. Space that complies with these guidelines." *Id.*

25. "Running Slope. The slope that is parallel to the direction of travel (see cross slope)." *Id.*

location of parking spaces,[26] parking spaces[27] and surface slope.[28] This claim appears to be based on a negligence per se theory of liability.

Lewis's reliance on the ADA Accessibility Guidelines is misplaced. Even assuming the handicapped parking spaces at the Save–A–Lot store did not comply with the Guidelines, Lewis has not explained how any violation contributed in any way to the accident. As described above, Brenda Helton died as a result of her vehicle traveling some 140 feet from the store into the Cumberland River. The Guidelines deal with accessibility of handicapped patrons to a public building. Helton's injury did not involve any condition related to the Guidelines.[29] Consequently, Lewis has shown neither that the ADA Guidelines were intended to prevent the type of occurrence that resulted in Helton's death nor that any violation of the Guidelines was a substantial factor in causing the death. Lewis has submitted no evidence indicating that she could establish a negligence per se claim.

In conclusion, the circuit court correctly determined that no genuine issue of material fact was in dispute and that B & R Corporation was entitled to judgment as a matter of law under either premises liability or negligence per se.

The judgment is affirmed.

ALL CONCUR.

---

**26.** "Location. Accessible parking spaces serving a particular building shall be located on the shortest accessible route of travel from adjacent parking to an accessible entrance...." *Id.*, Section 4.6.2.

**27.** "Parking Spaces. Accessible parking spaces shall be at least 96 in. (2440 mm.) wide. Parking access aisles shall be part of an accessible route to the building or facility entrance and shall comply with 4.3...." *Id.*, Section 4.6.3.

**28.** "Slope. Accessible route with a running slope greater than 1:20 is a ramp and shall comply with 4.8. Nowhere shall the cross slope of an accessible route exceed 1:50." *Id.*, Section 4.3.7. Lewis cites Section 4.6.6 on this point, but that section deals with passenger loading zones.

**29.** *Cf. Smith v. Wal–Mart Stores, Inc.,* 167 F.3d 286 (6th Cir.1999)(handicapped patron injured in restroom that did not comply with ADA Guidelines).