Rebecca LUCAS, Appellant,

v.

GATEWAY COMMUNITY SERVICES ORGANIZATION, INC., d/b/a Gateway Community Action Agency; Dennis Gulley, Individually and as Executive Director of Gateway Community Action Agency; and Mike Stacey, Appellees.

No. 2010–CA–001033–MR.

Court of Appeals of Kentucky.

June 24, 2011.

Teddy L. Flynt, Salyersville, KY, for appellant.

Jeffrey M. Baldwin, Paintsville, KY, for appellees, Gateway Community Services Organization, Inc., and Dennis Gulley.

Sandra Spurgeon, William W. Tinker III, Lexington, KY, for appellee, Mike Stacey.

Before LAMBERT, NICKELL, and WINE, Judges.

## OPINION

LAMBERT, Judge:

In this personal injury action arising from a slip-and-fall in a parking lot, Rebecca Lucas has appealed from the summary judgments entered by the Morgan Circuit Court dismissing her claims against Gateway Community Services Organization, Inc., d/b/a Gateway Community Action Agency, and Dennis Gulley, both individually and as the Executive Director of Gateway Community Action Agency (collectively "Gateway"), as well as Mike Stacey. Because we agree with the circuit court that summary judgment was warranted in this case, we affirm.

On March 25, 2008, Lucas and a friend went to Gateway, where her grandchildren (of whom she had custody) attended a head start program. The purpose of the trip was for Lucas's friend, Wanda Davis, to sign forms which would allow her to pick up the children if Lucas was unable to. The parking lot is graveled, while portions close to the building as well as the driveway are blacktopped. Lucas and Davis entered the main door to the building at about 11:00 a.m., spent a few minutes completing the necessary paperwork, and then left. Rather than leaving through the same entrance, a Gateway employee guided them to another door closer to the parking lot. The photographs in the record show that this door is on the same side of the building as the main door Lucas used when she entered the building.

Lucas followed Davis as Davis stepped off of the sidewalk next to the building and walked between two cars parked close to the building. One car was parked on a blacktopped portion of the lot, and Lucas walked on this portion until the blacktop ended just past where the car was parked. As she moved from the blacktopped portion to the graveled area of the parking lot, Lucas stepped on a piece of crumbling gravel and fell to the ground, severely injuring her arm.

Less than one month later, Lucas filed suit against Gateway seeking damages for negligent maintenance and construction of the parking lot and for failure to maintain the premises in a safe and hazard-free condition. Gateway filed a third-party complaint against Mike Stacey, from whom Gateway leased the premises. Pursuant to the lease agreement, Stacey was responsible for maintaining and repairing the parking lot. Lucas was also permitted to amend her complaint to name Stacey as a defendant.

Following discovery, both Gateway and Stacey filed motions for summary judgment, asserting that pursuant to premises liability law, they did not owe a duty to Lucas because the allegedly dangerous condition was open and obvious. They cited Lucas's deposition testimony in which she admitted that she was familiar with the premises, including the graveled and blacktopped portions of the parking lot, due to her earlier visits; that there had been no change in the condition of the lot; that she had used caution in the past due to her fear of falling; that her vision had not been blocked; and that had she been looking at her feet, she would not have fallen. In response, Lucas stated that she was unfamiliar with the exit she took from the building, that photographs established that the hazard was not open or obvious, and that she had not previously been

warned of the hazard. On May 3, 2010, the circuit court granted both motions, finding that the parking lot surface was open and obvious to Lucas and that it was "not unreasonably unsafe." In so holding, the circuit court noted that Lucas had admitted she was familiar with the premises, the condition was unchanged, and she had exercised caution in the past. This appeal follows.

Our standard of review is set forth in *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App.1996):

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue. *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991). Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Steelvest*, 807 S.W.2d at 480, *citing Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985). Consequently, summary judgment must be granted "only when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor ..." *Huddleston v. Hughes*, Ky.App., 843 S.W.2d 901, 903 (1992), *citing Steelvest, supra* (citations omitted).

"Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo.*" *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001).

In her brief, Lucas contends that because issues of material fact remain to be decided in this case, the circuit court's summary judgments were premature and inappropriate. Those issues include whether the hazardous state of the parking lot was open and obvious and whether she exercised the care necessary for her own safety as an invitee. She also argues that Gateway and Stacey failed to exercise ordinary care to keep the premises in a reasonably safe condition or to warn her of the dangerous condition. In their responsive briefs, Gateway and Stacey argue that summary judgment was appropriate in this case and that the Supreme Court of Kentucky's recent changes to the law of premises liability enunciated in *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky.2010), did not affect this case. Because *McIntosh* had not been rendered when Lucas filed her brief, she appropriately addressed the application of this case in her reply brief.

Generally, premises liability is a sub-category of negligence law, and in order to state a cause of action for negligence, "a plaintiff must establish a duty on the defendant, a breach of the duty, and a causal connection between the breach of the duty and an injury suffered by the plaintiff." *Lewis*, 56 S.W.3d at 436–37. For purposes of this case, the nature and scope of this duty is supplied by premises liability law: "[T]he owner of a premises to which the public is invited has a general duty to exercise ordinary care to keep the premises in a reasonably safe condition

and warn invitees of dangers that are latent, unknown or not obvious." *Id.* at 438.

■ In *Horne v. Precision Cars of Lexington, Inc.,* 170 S.W.3d 364, 368–69 (Ky. 2005), the Supreme Court of Kentucky presented a comprehensive review of premises liability law in the Commonwealth and identified three distinct categories that have emerged. "The first category holds that the owner of a business premises has no duty to protect invitees from injuries caused by 'natural outdoor hazards which are as obvious to an invitee as to an owner of the premises.' " *Id.* at 368, quoting *Standard Oil Co. v. Manis,* 433 S.W.2d 856, 858 (Ky.1968). "The second category holds that if the invitee was injured because of an encounter with a foreign substance or other dangerous condition on the business premises, the owner can avoid liability by proving that the hazard was not caused by the owner or the owner's employees and that the hazard was not present for a sufficient period of time before the accident to give the owner notice to remove it or to warn invitees of its presence." *Horne,* 170 S.W.3d at 368. Neither category is at issue in the case present before this Court. Rather, the present case involves the third category, which "involves hazards caused by the owner. If the hazard is 'known or obvious to' the invitee, the owner has no duty to warn or protect the invitee against it." *Id.* The Court held that "the plaintiff's admission that the hazard was both known and obvious to him or her pertains not only to the issue of contributory fault, but also to whether the hazard was so known and obvious as to obviate any duty on the part of the owner to warn or protect the invitee against the hazard." *Id.* at 369.

However, the Supreme Court of Kentucky has very recently modified the open and obvious doctrine in *McIntosh, supra,* so that the doctrine is more compatible with comparative fault rather than contributory negligence. Deciding that the question of whether the doctrine applies is one of fact related to fault, the Supreme Court adopted the modern trend as expressed in the Restatement (Second) of Torts § 343A(1) (1965) regarding open and obvious conditions:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

*See McIntosh,* 319 S.W.3d at 389–90. The commentary to this section discusses cases where a possessor of land would still have to anticipate potential harm despite the fact that a danger is both known and obvious, such as in a case where an invitee's attention is distracted. *Id.* This approach, the Court held, comports with Kentucky's "focus on foreseeability in its analysis of whether or not a defendant has a duty. . . . That harm from an open and obvious danger can sometimes be foreseeable suggests that there should be some remaining duty on the land possessor[.]" *Id.* at 390.

The Court concluded that "[t]he lower courts should not merely label a danger as 'obvious' and then deny recovery. Rather, they must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger. If the land possessor can foresee the injury, but nevertheless fails to take reasonable precautions to prevent the injury, he can be held liable." *Id.* at 392. The Court went on to address the position of the plaintiff under this modified doctrine:

[T]his view also alters the position of the person injured by an open and obvious danger to the extent that only under extremely rare circumstances could a plaintiff avoid some share of the fault

under comparative negligence. While "open and obvious danger" is no longer a complete defense under the Restatement, it is nonetheless a heightened type of danger which places a higher duty on the plaintiff to look out for his own safety. Such a condition, being open and obvious, should usually be noticed by a plaintiff who is paying reasonable attention. Yet the plaintiff is not completely without a defense to this: there could be foreseeable distraction, or the intervention of a third party pushing the plaintiff into the danger, for example. Even in such situations, a jury could still reasonably find some degree of fault by the plaintiff, depending on the facts.

*Id.*

Based upon the modification of the open and obvious doctrine, the Supreme Court concluded that a duty was owed to the plaintiff. McIntosh, a paramedic, was injured while she was transporting a patient to the hospital when she tripped and fell over an unmarked curb outside of the emergency room entrance. Although she had successfully navigated this entrance before (she had helped transport about 400 patients to this hospital), the Court held that the injury was foreseeable and that "[t]he Hospital had good reason to expect that a paramedic, such as McIntosh, would be distracted as she approached the emergency room entrance." *Id.* at 393. The Court also recognized that "McIntosh, in turn, had a duty to act reasonably to ensure her own safety, heightened by her familiarity with the location and the arguably open and obvious nature of the danger." *Id.* at 395.

With the above statement of the law in mind, we shall now consider the case *sub judice*.

■ The main thrust of Lucas's argument on appeal is that issues of fact remain related to both whether the condition of the parking lot was open and obvious and whether she exercised ordinary care for her own safety. She maintains that both of these factual issues should be decided by a jury rather than via summary judgment. In conjunction with this, she asserts that Gateway and Stacey did not exercise ordinary care to keep the parking lot in a reasonably safe condition or warn her of its dangerous condition. In his brief, Stacey counters Lucas's open and obvious argument by pointing out that the dispute below was whether she was responsible for her own carelessness, not whether the parking lot constituted an open and obvious hazard.

Despite Stacey's argument, our first consideration must be whether the circuit court properly held that no disputed issues of material fact existed concerning the open and obvious nature of the parking lot. The term "obvious" has been defined to mean "that both the condition and the risk are apparent to and would be recognized by a reasonable man in the position of the visitor exercising ordinary perception, intelligence and judgment." *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 529 (Ky. 1969). Here, we must agree with Gateway and Stacey that there are no disputed facts on this issue that would prevent the entry of a summary judgment. As stated by the circuit court in its order,

> [T]he Plaintiff, Rebecca Lucas, has admitted in deposition testimony that ... she was familiar with the Gateway premises from earlier visits, including the blacktopped and graveled portions of the lot, that the condition of the lot did not change from her earlier visits, that on previous visits she specifically exercised caution in crossing the lot due to a fear of walking on the gravel surface, that the surface of the lot was open and obvious on the day she fell, that ... nothing was blocking her vision of the

area where she fell, that the fall occurred in daylight and good weather and she was not distracted, that if she had been looking down to see where she was stepping she would not have fallen, and that Defendant Stacey did nothing to contribute to Plaintiff's injuries save failing to blacktop the Gateway lot.

Based upon her own testimony, Lucas was well aware of the condition of the lot, going so far as to admit that she used caution when walking in the parking lot on the several occasions that she visited Gateway.

Kentucky law is clear that in summary judgment matters, "[t]he moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present 'at least some affirmative evidence showing that there is a genuine issue of material fact for trial.'" *Lewis*, 56 S.W.3d at 436. Here, Lucas attempts to meet her burden by stating that the area where she fell was hidden and that she had never seen crumbling blacktop in the parking lot prior to this date. However, this is simply not enough to constitute affirmative evidence sufficient to defeat Gateway's and Stacey's respective motions. The photographs attached to Lucas's deposition show that the area where she fell was not at all hidden by the parked cars, but rather was a short distance past them.

Therefore, we hold that the circuit court did not commit error in finding that there were no disputed issues of material fact regarding the open and obvious nature of the parking lot. But this holding does not conclude our analysis.

■ We must next look to whether an issue of fact remains concerning the foreseeability of the injury pursuant to *McIntosh*. While *McIntosh* had not been rendered when the circuit court entered the summary judgments, the parties have been able to argue on appeal whether that decision applies in this case. Lucas contends that the jury should consider whether the parking lot constituted an open and obvious danger when allocating fault and that the jury could reasonably conclude that she was distracted while looking for her car or that her view had been obstructed. On the other hand, Gateway and Stacey assert that *McIntosh* is distinguishable from the matter at hand because there was no distraction so as to make Lucas's injury foreseeable. We agree with Gateway and Stacey that *McIntosh* does not apply to alter the result in this case.

Despite Lucas's claims that the jury could have found that she was distracted while looking for her car or her view was obstructed, her own testimony provides otherwise. Because her testimony does not match these claims, Lucas's assertions in her reply brief that she was distracted are not supported by affirmative evidence in the record, but are merely unsupported claims. As such, those assertions cannot work to defeat Gateway's and Stacey's argument that no disputed issues of material fact exist. Unlike the plaintiff in *McIntosh*, Lucas was not distracted by some outside force, such as rushing an ill patient into the hospital. As Gateway and Stacey point out, Lucas was not acting under time-sensitive or stressful circumstances. Rather, she was following her friend into the parking lot that she admitted she was familiar with and that she admitted to using caution to walk on when she visited the premises. While it might ordinarily be appropriate to remand a case such as this to the circuit court to consider *McIntosh*'s application, we need not do so here because of the evidence that is already in the record.

For the foregoing reasons, the summary judgments in favor of Gateway and Stacey

entered by the Morgan Circuit Court are affirmed.

ALL CONCUR.