RENDERED: FEBRUARY 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0093-MR

ANDREW W. DUSING                                   APPELLANT


                  APPEAL FROM BOONE CIRCUIT COURT
v.                 HONORABLE MELANIE BRUMMER, JUDGE
                  ACTION NO. 23-CI-01446


TRIPLE CROWN DEVELOPERS, LLC                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE: Appellant, Andrew W. Dusing ("Dusing"), appeals from a final opinion and order of the Boone Circuit Court denying his motion for summary judgment and granting summary judgment to Appellee, Triple Crown Developers, LLC ("Triple Crown").

# BACKGROUND

Triple Crown has been actively engaged in marketing and developing a Boone County subdivision since the 1990s. Dusing is a homeowner in this development. Lot 11 is a separate parcel directly adjacent to Dusing's rear property line.[1] It is small, forested, and situated at the end of a narrow lake, making it difficult to access. Given these geographic challenges, Triple Crown was unsure whether Lot 11 could ever be cost-effectively developed as a single parcel. Consequently, Triple Crown's Vice-President of Sales, Anthony Berling ("Berling"), and Dusing discussed the possibility of Dusing purchasing the lot to provide a privacy buffer behind his property.

On March 23, 2022, Berling sent Dusing an email stating: "We are willing to sell you the highlighted area shown in the attached drawing for a purchase price of 50K. The parcel would be a non-buildable parcel."

On April 4, 2022, Berling then sent Dusing a text message that read: "Andy, this drawing shows what we r willing to convey to u for $50K." The text included a drawing that portrayed a slightly different configuration of the parcel than the drawing attached to the March email.

---

[1] The lot at issue is now technically Lot 10, due to Triple Crown's later decision to develop three larger homes in lieu of four smaller homes in this particular section of the development. (See Anthony Berling Deposition: pp. 30-31). However, this Opinion will continue to refer to it as Lot 11 throughout to avoid unnecessary confusion.

Dusing replied, also via text message, as follows: "Thanks Tony . . . we'd like to accept your offer." Neither party took further action on the proposed arrangement.

A few weeks after Berling sent the initial email, a third party decided that they wanted to purchase Lot 11 as part of a consolidated parcel encompassing two adjoining lots. Again, due to the lot's inaccessibility, it was anticipated that it would remain non-buildable. Berling telephoned Dusing to tell him about the proposal. He described it as a "win-win" for Dusing since he would get his desired result—the lot would remain an undeveloped privacy buffer—without expending any funds. According to Berling, Dusing expressed satisfaction with this new development. Berling testified that Dusing seemed relieved not to have to come up with the money. Berling also stated that at that point, he considered the matter to be over. Both parties agree that there was never any discussion about what would happen if the third-party sale did not occur.

In July 2023, the third party told Berling that his circumstances had changed, and he was now unable to buy the property. Berling testified that he did not relay this news to Dusing or attempt to resurrect the earlier proposal, because Dusing had expressed no further interest in Lot 11 once he knew it was being marketed as part of a larger combined parcel and would remain undeveloped.

That same month, Dusing and his next-door neighbor asked Triple Crown to dredge the lake that bordered the back of both their properties. Triple Crown agreed to do so. Several trees had to be cleared so the dredging equipment could access the lake. Dusing and his wife were out of town when the trees were cut down and the lake was dredged. When they returned home and saw that some trees had been removed, they were dismayed.

Dusing began calling and texting Berling to express his displeasure. Berling explained that the trees had to be removed so the heavy equipment could reach the lake. He also reminded Dusing that he had requested that the lake be dredged. Additionally, the subdivision's governing regulations permit Triple Crown to access and dredge the lake whenever they deem it necessary. Dusing then asked about the earlier statement that the prospective property buyer intended to leave the lot undisturbed, and Berling told him that deal had recently fallen through. It was only then that Dusing started to assert that he had a pre-existing right to purchase the lot for $50,000. Dusing filed a lawsuit alleging that Triple Crown had reneged on a contractual obligation to sell Lot 11 to him and demanding specific performance. Triple Crown countered that the discussions with Dusing were preliminary in nature, and there was no contractual obligation.

## PROCEDURAL HISTORY

Dusing and Triple Crown filed cross-motions for summary judgment. The trial court denied Dusing's motion and granted summary judgment for Triple Crown. Dusing timely filed a notice of appeal.

Dusing subsequently had a *lis pendens* placed on Lot 11 pending resolution of this appeal. Triple Crown filed a motion to discharge the *lis pendens* notice. This Court denied that motion in April 2025.

## STANDARD OF REVIEW

Both parties herein filed motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. Because only legal questions and the existence, or non-existence, of material facts are considered by the appellate court, a grant of summary judgment is reviewed *de novo*. *Lewis v. B & R Corp.*, 56 S.W.3d 432 (Ky. App. 2001). Further, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 480 (Ky. 1991).

---

[2] Kentucky Rules of Civil Procedure.

## ANALYSIS

Viewing the record in a light most favorable to Dusing, we will assume that the parties *intended* to form a binding contract. However, intent alone is not sufficient to convey real property, and this exchange did not form a legally enforceable contract. Even if both Berling and Dusing believed that the initial email and two subsequent texts constituted a binding agreement, it was an invalid contract to sell real property under the Statute of Frauds ("SOF"). KRS[3] 371.010(6) states in relevant part: "No action shall be brought to charge any person . . . upon any contract for the sale of real estate . . . unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent."

With origins in the common law, the SOF obviously predates electronic communication. In order to address more recent technology, Kentucky adopted the Uniform Electronic Transactions Act ("UETA")[4] in 2000, making electronic records and signatures legally binding for most transactions in the Commonwealth. Records and signatures cannot be denied legal effect due to the

---

[3] Kentucky Revised Statute.

[4] The UETA is codified in KRS Chapter 369, Sections 101 through 139.

SOF simply because they only exist in electronic format.[5]  However, while the UETA clarifies that electronic transactions can satisfy the SOF, it also makes it clear that courts must evaluate the enforceability of contested electronic records and signatures on a case-by-case basis.  Per KRS 369.109(2), the effect of a contested electronic record or signature must be determined from analyzing the context and surrounding circumstances at the time of its creation, execution, or adoption.  Therefore, the totality of the circumstances will determine the court's holding.

The bottom of the initial email did display Berling's email signature block, but it only contained standard identifying information typically included at the end of most business emails.  It did not include an additional signature line above the automatic signature block.  It also did not include a secure electronic signature, or e-signature, which is the legal equivalent of a "wet" signature for digital agreements.[6]  Nor did it transmit an e-signature block to Dusing for him to sign.  Berling's signature block would have been automatically attached to every email he sent that day.  It was there only to identify him and provide contact information, not to formalize or authenticate a contract to purchase land.

---

[5] *See* KRS 369.107(1).

[6] KRS 369.102(8) defines electronic signature as: "an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record[.]"

-7-

Second, Berling's next communication to Dusing was a text message that had no name or signature attached. The response text from Dusing similarly contained no signature. Significantly, Dusing responded by text not to Berling's email which contained the latter's signature block, but to Berling's follow-up text message 12 days later—which contained a *materially different* drawing of Lot 11 than the one contained in Berling's initial email.

Third, all these discussions occurred before Lot 11 had been formally platted and before any legal description of the property had been created. This is relevant because our Supreme Court has noted that a transaction agreement subject to the SOF must provide "with sufficient certainty the size, amount, shape, or boundary of the property to be conveyed." *Gray v. Stewart*, 658 S.W.3d 1, 8 (Ky. 2022). It is not enough for the real property's description to provide only "enough detail to locate the property[.]" *Id.* Reviewed in this light, the electronic communications exchanged between Dusing and Berling were of an imprecise nature associated with preliminary discussions, and not the more exacting language used when reducing a sale of real property to writing.

Beyond this initial electronic exchange, there was no documented communication that Dusing took any action to close the deal. Instead, he expressed agreement with Berling's proposal to sell the parcel to a third party and no contingency plans were discussed if that sale fell through. Without digital e-

signatures or hard copy written equivalents, and without a precise property description, there simply was no enforceable contract for Dusing to purchase Lot 11 pursuant to the SOF. Furthermore, even if the initial agreement somehow survived a SOF analysis, Dusing's subsequent agreement to allow a third party to buy Lot 11 effectively rescinded the initial agreement.

Events as they unfolded support this conclusion. Dusing did not check in with Triple Crown for over a year following his April 2022 text. He also did not raise the Lot 11 topic in July 2023 when he asked Berling to dredge the lake. Dusing only asserted a right to buy Lot 11 after the tree removal disagreement occurred in connection with the lake dredging.

As outlined in the trial record, there are no genuine issues of material fact in this case. Thus, summary judgment is appropriate. Applying the law to the facts as outlined above, we agree with the trial court, albeit on somewhat different grounds, that the alleged agreement between Dusing and Berling is not legally enforceable. Thus, Dusing's remedy of specific performance is unavailable and summary judgment for Triple Crown is appropriate.

Finally, the Court directs the parties to RAP[7] 32(E)(1)(c) which provides that "[e]xcept for matters of which the appellate court may take judicial notice, materials and documents not in the record shall not be introduced or used as

---

[7] Kentucky Rules of Appellate Procedure.

-9-

exhibits in support of briefs." The attachments to the Appellee's brief did not set forth where each document could be found in the official court record as required by RAP 32(E)(1)(d). The purpose of requiring a pinpoint citation to the record for matters included in an appendix is to show that the appended items were presented to a trial court because, with very limited exceptions, it is improper for a party to include matters in an appendix that are not contained in the trial court record. Therefore, it was incumbent upon Triple Crown to include in the appendix only materials that are found in the record and to cite exactly where in the record we may find those items. *See W.I.S. v. K.M.B.*, 722 S.W.3d 569, 578 (Ky. App. 2025).

## CONCLUSION

Based on the foregoing, the order of the Boone Circuit Court denying Dusing's motion for summary judgment and granting summary judgment to Triple Crown is hereby AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Joseph E. Conley, Jr.
Edgewood, Kentucky

BRIEF FOR APPELLEE:

T. Lawrence Hicks
Edgewood, Kentucky

-10-