**Loyd BAKER, Appellant,**

v.

**Larry Joe McINTOSH, Appellee.**

**No. 2003-CA-001361-MR.**

Court of Appeals of Kentucky.

April 2, 2004.

---

Samuel B. Castle, Jr., Guy E. Millward, Jr., Millward & Castle, PLLC, Barbourville, KY, for appellant.

Robert R. Baker, Rankin & Baker, Stanford, KY, for appellee.

Before BARBER, KNOPF, and SCHRODER, Judges.

*OPINION*

KNOPF, Judge.

Loyd Baker appeals from a summary judgment of the Rockcastle Circuit Court, entered January 13, 2003, dismissing his negligence-based claim for damages against Larry McIntosh. The trial court ruled that under the alleged circumstances McIntosh could not be found to have breached his duty of care to Baker. Baker contends that the question should be put to a jury. We agree with the trial court.

As the parties note, summary judgment is inappropriate unless the movant demonstrates that on a dispositive aspect of the case there is no genuine issue of material fact.[1] Both the trial court and this Court assess such motions, not by weighing the evidence, but by reviewing the record in the light most favorable to the opposing party.[2]

---

1. *Steelvest, Inc. v. Scansteel Service Center,* Ky., 807 S.W.2d 476 (1991).

2. *Id.*

Viewed favorably to Baker, therefore, the record indicates that McIntosh is a horse trader who has been in the business virtually his entire life. He buys and sells horses every week and generally has between fifteen and twenty in stock on his small farm in Rockcastle County. He and Baker have been acquaintances for several years. Baker, a tobacco farmer and school-bus driver for much of his life, was a friend of McIntosh's father-in-law, often accompanying him to horse shows and sales. As a friend of the family, Baker on several occasions had visited McIntosh's farm and observed McIntosh's work. His visits to the McIntosh farm continued even after the father-in-law's death.

It was apparently not unusual, therefore, when on March 21, 2001, Baker arrived unannounced at McIntosh's barn. McIntosh was busy loading as many as twenty colts into a trailer. As was his custom, he had backed the trailer into the barn's entrance and, to prevent the colts from escaping, had closed the barn's sliding door against one side of the trailer and had opened the trailer's swinging door against a wall inside the barn on the other side. He would run a colt into the trailer, halter it, and tie it into place. When Baker arrived, he helped McIntosh tie one of the colts in place in the trailer, then, according to Baker, McIntosh asked him to hold the trailer's door open while he ran the next colt aboard. Baker was standing behind the trailer's door with his hand on the edge of the door between it and the barn wall. McIntosh waved at the colts to shoo them into the trailer. In the ensuing commotion one of the colts reared and fell back against the trailer door pinning and breaking Baker's wrist.

▆▆▆ As a result of the accident, Baker claims to have incurred medical expenses, lost income, and pain and suffering. He filed the instant complaint in March 2002. As he notes, a premises owner has a duty to conduct his activities in such a way as not to expose others to what in the circumstances would be an unreasonable risk of harm.[3] Similarly, "one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if, (a) he intentionally causes the animal to do the harm, or (b) he is negligent in failing to prevent the harm."[4]

▆▆▆ On the other hand, a visitor to a work space, particularly a gratuitous visitor or licensee, "is not entitled to expect that special preparation will be made for his safety, but is entitled to expect only such safety as he would find in a properly conducted [enterprise]."[5] Furthermore, "[r]easonable care on the part of the possessor of . . . premises does not ordinarily require precaution or even warning against dangers that are known to the visitor or so obvious to him that he may be expected to discover them."[6]

▆▆▆ We agree with the trial court that the record[7] indicates no issue of material

---

3. *Perry v. Williamson,* Ky., 824 S.W.2d 869 (1992).

4. *Restatement of the Law (Second) Torts* § 518.

5. *Bonn v. Sears, Roebuck & Company,* Ky., 440 S.W.2d 526, 529 (1969).

6. *Id.* at 528. *Johnson v. Lone Star Steakhouse & Saloon of Kentucky, Inc.,* Ky.App., 997

S.W.2d 490 (1999); *Scifres v. Kraft,* Ky.App., 916 S.W.2d 779 (1996).

7. In his brief to this Court Baker for the first time asserts that there is an expert willing, presumably, to criticize McIntosh's manner of loading the colts. This assertion is untimely. The trial court properly based its ruling on the record before it, *Wymer v. JH Properties,*

fact and that under the legal principles just stated McIntosh did not breach his duty of care toward Baker. McIntosh was entitled to conduct his business as he was accustomed. The risk that stock being loaded into a trailer will bump against adjacent doors, particularly colts well known to be rambunctious and skittish, was, or should have been, as apparent to Baker as to McIntosh. McIntosh thus had no duty either to prevent the colt from falling against the trailer door or to warn Baker that contact with the door was possible.

Accordingly, we affirm the January 15, 2003, judgment of the Rockcastle Circuit Court.

ALL CONCUR.

*Inc.*, Ky., 50 S.W.3d 195 (2001), and our

review is limited to the same record.