**Cindy WEST, Appellant,**

**v.**

**KKI, LLC, d/b/a Six Flags Kentucky Kingdom, Appellee.**

**No. 2007–CA–001463–MR.**

Court of Appeals of Kentucky.

Oct. 3, 2008.

Discretionary Review Denied by Supreme Court Jan. 13, 2010.

John K. Carter, La Grange, KY, for appellant.

John E. Hanley, Lee S. Archer, Louisville, KY, for appellee.

Before COMBS, Chief Judge; KELLER, Judge; HENRY,[1] Senior Judge.

## OPINION

HENRY, Senior Judge (Assigned).

Cindy West appeals from an order of the Jefferson Circuit Court granting summary judgment to defendant KKI, LLC d/b/a Six Flags Kentucky Kingdom (Kentucky Kingdom), in a lawsuit alleging that the appellant was injured while riding the

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

amusement park's stand-up roller coaster ride, the Chang. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the weekend of July 12, 2002, West traveled from her home in Washington, Pennsylvania, to Louisville, Kentucky, to meet her friend, Greg Morris, a resident of Columbia, Tennessee. They spent the day Saturday, July 13, 2002, at the Kentucky Kingdom Amusement Park. Between 11:00 a.m. and 11:30 a.m., the two rode the Chang, a stand-up roller coaster ride.

In her deposition, West testified that during the ride she suffered side-to-side head banging against the safety harness holding her in place; was jostled about; and felt her neck crack. She described the ride as "one of the most intense experiences she has ever had." She testified that after the ride she was initially unable to walk or talk, and "just felt terrible." In his sworn affidavit filed into the record testimony, Morris substantially corroborated West's testimony concerning her diminished physical capacity following the ride.

Immediately following the ride, West sought medical attention at the Park's first-aid station. There apparently is no record, however, of her visit to the facility.

Despite her late morning injury, West and Morris remained at the park until its 10:00 p.m. closing time because one of the reasons for their trip to the park was to attend a music event which did not begin until that evening.

The next morning, West still suffered from the effects of the previous day. Following her return to Pennsylvania, West continued to suffer from symptoms, including headaches and dizziness. In the course of discovery, West stated that as a result of the ride, "she received injuries to her head, brain, neck and upper back, suffered and continues to suffer from chronic severe migraine headaches and muscle spasms of the neck and upper back." She sought medical attention from, among others, Dr. Craig D. Fox and Dr. Bruce Cotugno, a neurologist. Dr. Cotugno diagnosed West as having suffered a mild central vestibular lesion. Both physicians have presented deposition testimony and affidavits attributing West's condition to the July 13, 2002, ride on the Chang; however, a crucial underpinning of these opinions is West's anecdotal account of the ride. They have no personal knowledge of the events of July 13, 2002, nor do they purport to have expertise in the area of amusement park ride safety.

Based upon her belief that her ride on the Chang caused her medical condition, on July 11, 2003, West filed a lawsuit against Kentucky Kingdom in Jefferson Circuit Court. West alleged causes of action sounding in negligence. More specifically, her Complaint alleged negligence under the following theories:

8. The stand up roller coaster ride, which Plaintiff believes is commonly known as the CHANG constituted, at all times mentioned herein, a dangerous instrumentality, defectively designed and constructed, under the sole control of the Defendant; Defendant knew, or should have known, the inherent dangerousness of the instrumentality; Defendant operated the above mentioned ride in a careless, negligent and reckless manner in that it failed to exercise the proper degree of care owed to Plaintiff as a result of which Plaintiff incurred the aforementioned injuries while riding the roller coaster.

9. At all times mentioned above the stand up roller coaster, owned, operated, and maintained by the Defendant was negligently and imperfectly constructed and was inadequate, defective and un-

safe and as a direct and proximate result of the imperfection, defects, inadequacy and unsafeness of Defendant's roller coaster and of the carelessness and negligence of the Defendant, its agents and servants, in the design, operation and construction of the roller coaster, Plaintiff suffered the injuries described above.

10. At all times mentioned herein, the stand up roller coaster, owned, operated, and maintained by Defendant, was defectively designed and constructed and unreasonably dangerous for its intended or expected use and Defendant owed a duty to warn Plaintiff of its unreasonable dangerousness and as a result of Defendant's negligence set forth hereinabove and its failure to warn of the unreasonable dangerousness of its roller coaster, Plaintiff suffered the injuries described hereinabove.

Kentucky Kingdom responded, denying liability. Following the completion of discovery, on February 28, 2007, Kentucky Kingdom filed a motion for summary judgment.

As further described below, on June 21, 2007, the trial court entered an order awarding summary judgment to Kentucky Kingdom upon all theories for recovery. This appeal followed.

## STANDARD OF REVIEW: SUMMARY JUDGMENT

The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996); Kentucky Rules of Civil Procedure (CR) 56.03. "The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001), citing *Steelvest v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480–82 (Ky.1991).

"The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present 'at least some affirmative evidence showing that there is a genuine issue of material fact for trial.'" *Lewis*, 56 S.W.3d at 436, citing *Steelvest*, 807 S.W.2d at 482. The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." *Steelvest*, 807 S.W.2d at 480. The Kentucky Supreme Court has held that the word "impossible," as set forth in the standard for summary judgment, is meant to be "used in a practical sense, not in an absolute sense." *Lewis*, 56 S.W.3d at 436. "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis* at 436.

Notwithstanding the foregoing, however, central to the trial court's summary judgment decision was its determination that the testimony of West's expert witness upon safety issues concerning the Chang is inadmissible under the standards contained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny. As further discussed below, we review the trial court's ruling upon this evidentiary issue under the abuse-of-discretion standard.

## DISCUSSION

We begin by noting that West's theories of recovery as stated in her Complaint, as set out above, are not a model of clarity. However, as we construe the Complaint, in Paragraph 8 she states causes of action based upon: (1) products liability/defective design, and (2) ordinary negligence in Kentucky Kingdom's operation of the ride; in Paragraph 9 she states a cause of action based upon products liability/manufacturing defect; and in Paragraph 10 she (1) again alleges causes of action based upon defective design and manufacturing defects, and (2) alleges a cause of action based upon failure to warn, grounded either in premises liability or products liability (the Complaint does not specify).

In its Opinion and Order granting summary judgment, the trial court stated as follows:

A study of the pleadings reveals absolutely no evidence that [Kentucky Kingdom] negligently operated or maintained the Chang. Ms. West's purported expert, William H. Avery III, clearly states his opinion as to [Kentucky Kingdom's] negligence in this case as follows: (a) [Kentucky Kingdom] knew or should have known that intense head banging occurred on the Chang; (b) that the ride requirements as posted should include the instruction that the rider has to keep his or her head flat against the headrest (which he found impossible to do at some of the most intense head banging parts of the ride); (c) that the ride's warning did not inform riders that head banging was possible and could cause injury. These opinions do not implicate [Kentucky Kingdom's] operation, maintenance or construction of the Chang. Considered in a light most favorable to the Plaintiff, Mr. Avery's opinions, at best, support a negligent failure to warn claim. To the extent Ms. West's Complaint alleges otherwise, the Court shall grant summary judgment in favor of [Kentucky Kingdom].

■ We agree with the trial court's conclusions, and would add to its discussion that there is a complete lack of competent evidence contained in the record supporting either a design or manufacturing defect in relation to the Chang. Further, in her brief, West does not defend her claims based upon ordinary negligence in the operation of the ride (e.g., operator-caused stopping or jerking on this particular ride) or upon her manufacturing and design defects theories. Indeed, the foregoing theories appear to us to have been abandoned upon appeal,[2] and West appears to acquiesce in the trial court's determination that her only viable cause of action is upon a failure-to-warn theory.

We thus confine our review to her failure-to-warn claim. As further discussed below, the trial court ultimately granted summary judgment in favor of Kentucky Kingdom upon West's failure-to-warn theory because of its determination that the opinion testimony of her expert witness, William H. Avery, in support of this cause of action does not meet the requirements for admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra; Kumho Tire Company v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); and *Goodyear Tire and Rubber Company v. Thompson,* 11 S.W.3d 575 (Ky.2000). The exclusion of Avery's expert testimony, the trial court concluded, was fatal to her failure-to-warn claim.

Before us, West contends that the trial court misapplied Kentucky Kingdom's duties to West; that the trial court misap-

---

**2.** We accordingly do not further address these theories. *Milby v. Mears,* 580 S.W.2d 724, 727 (Ky.App.1979) (Errors not raised on appeal are waived).

plied the law of product defect in Kentucky; and that the trial court misapplied the principles of *Daubert* and its progeny to the proffered testimony of West's experts. We consider these arguments under a slightly different organizational structure than as presented by West in her brief.

## FAILURE TO WARN

As previously noted, in her Complaint West alleged that Kentucky Kingdom failed to warn patrons of the unreasonable dangerousness of the Chang. While she did not more specifically identify the basis for this theory in her Complaint, in her brief she has supported the cause of action under both premises liability and products liability theories. We accordingly set forth below the requirements to support a failure-to-warn cause of action under each of these theories.

## PREMISES LIABILITY

West contends that the trial court misapplied Kentucky Kingdom's duties to West under her claim for recovery under premises liability principles. She alleges that the trial court applied the principles of simple negligence rather than the duties set out in *Olfice, Inc., v. Wilkey*, 173 S.W.3d 226, 227 (Ky.2005) which, she argues, define Kentucky Kingdom's duties as the duties to: (1) undertake reasonable inspection of the Chang; (2) take reasonable precautions to protect its patrons from foreseeable danger; and (3) warn its patrons if it has actual knowledge of the danger.

In its June 21, 2007, order the trial court stated the relevant negligence law as follows:

> Proprietors of amusement parks have no duty to insure its [sic] guests' safety, but must exercise that degree of skill and care ordinarily expected of reasonable and prudent operators of amusement parks under similar circumstances. *Sidebottom v. Aubrey*, Ky., 267 Ky. 45, 101 S.W.2d 212 (1937). Actionable negligence consists of a duty, a breach of that duty and consequent injury. The absence of any of these three elements is fatal to a negligence claim. *Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 349 (Ky.App.2000).

A negligence action requires proof of: (1) a duty on the part of the defendant; (2) a breach of that duty; (3) a consequent injury, which consists of actual injury or harm; and (4) legal causation linking the defendant's breach with the plaintiff's injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky.2003). Duty presents a question of law. "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.*, 724 S.W.2d 228, 229 (Ky.App.1986). "Breach and injury [ ] are questions of fact for the jury to decide." *Pathways* at 89.

While general negligence law requires the existence of a duty, premises liability law supplies the nature and scope of that duty. *Lewis v. B & R Corporation*, 56 S.W.3d 432 (Ky.App.2001). Thus, the duty Kentucky Kingdom owed to West is dependent upon the status West occupied upon the occasion of her visit-invitee, licensee, tenant, or trespasser.

A person is an invitee if: "(1) he enters by invitation, express or implied, (2) his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land and (3) there is mutuality of benefit or benefit to the owner." *Johnson v. Lone Star Steakhouse & Saloon of Kentucky, Inc.*, 997 S.W.2d 490, 491–492 (Ky.App. 1999) (quoting *Black's Law Dictionary*,

827 (6th ed.1990)). Clearly West was an invitee during her visit to Kentucky Kingdom on July 13, 2002.

■ "[A] premises owner has a duty to conduct his activities in such a way as not to expose others to what in the circumstances would be an unreasonable risk of harm." *Baker v. McIntosh*, 132 S.W.3d 230, 232 (Ky.App.2004), citing *Perry v. Williamson*, 824 S.W.2d 869 (Ky.1992). Under common-law premises liability principles, the duty owed by the premises owner to an invitee is a general duty to exercise ordinary care to keep the premises in a reasonably safe condition and to warn invitees of dangers that are latent, unknown, or not obvious. *Lewis v. B & R Corporation*, 56 S.W.3d at 438. The owner's duty to invitees is to discover the existence of dangerous conditions on the premises and either correct them or warn of them. *Lone Star Steakhouse*, 997 S.W.2d at 492.

■ While the trial court did not fully set forth the relevant premises liability law, we believe it ultimately applied a proper standard. As relevant to this case, the crucial element of premises liability law is that the premises owner has the duty to "warn invitees of dangers that are latent, unknown, or not obvious." The trial court properly considered the case as a failure-to-warn action. Thus we disagree with West that the trial court applied an improper premises liability standard in reaching its decision to award summary judgment to Kentucky Kingdom. In any event, in our review of the trial court's summary judgment determination, we will consider the more expansive premises liability principles referred to above.

## PRODUCTS LIABILITY

Similarly, West contends that the trial court misapplied the law of products liability in its summary judgment determination. More specifically, she alleges that the trial court's reliance on *Sidebottom v. Aubrey* 267 Ky. 45, 101 S.W.2d 212 (1937), is misplaced. In West's view the proper standard is set out in *Edwards v. Hop Sin, Inc.*, 140 S.W.3d 13, 15 (Ky.App.2003), which, she says, holds that "[Kentucky Kingdom] can be held liable if the finder of fact is satisfied that [Kentucky Kingdom] either knew or should have known that absent a proper warning, the Chang poses risk of harm to some patrons and failed in its duty to properly warn of that risk."

The trial court's June 21, 2007, order did not state Kentucky Kingdom's duties under premises liability and products liability separately; rather, it stated the amusement park's duties generally as discussed above.

Products liability causes of action are most frequently directed against the manufacturer of the product rather than a down-the-line business entity. Nevertheless, causes of action against such entities are appropriate under certain circumstances. *See* Kentucky Revised Statutes (KRS) 411.340; *Franke v. Ford Motor Co.*, 398 F.Supp.2d 833 (W.D.Ky.2005); *T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526 (Ky.2006).

This is an atypical products liability claim against a down-the-line entity in that there was no sale of a consumer product to an end user; rather, it may more accurately be stated that Kentucky Kingdom provided a service to West which incidentally employed a "product"—i.e., the Chang. Nevertheless, as West has raised the theory of recovery, we will review West's products liability/failure-to-warn claim applying down-the-line business entity principles.

We note that the "middleman" provisions of the Kentucky Product Liability Act contained in KRS 411.340 provide as follows:

In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

■ While it appears that Kentucky Kingdom was involved in the assembly of the Chang, the record contains no evidence that it was not assembled in accordance with the manufacturer's specifications. Nevertheless, the "middleman" provisions of the Kentucky Product Liability Act were designed to protect only those distributors, wholesalers, or retailers, who have no independent responsibility for the design or manufacture of a product, *see Franke v. Ford Motor Co.*, 398 F.Supp.2d at 841, whereas Kentucky Kingdom did have a responsibility in assembling the Chang. Moreover, notwithstanding the "middleman" provisions of the Kentucky Product Liability Act, a wholesaler, distributor or retailer may be liable if it: (1) breaches an express warranty, or (2) knew or should have known at the time of distribution that the product was in a defective condition, unreasonably dangerous to the user.

■ As relevant to the issues before us, the following is a general summary of the applicable Kentucky products liability law. "[A] warning must be fair and adequate, to the end that the [product] user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse." *Post v. American Cleaning Equip. Corp.*, 437 S.W.2d 516, 520 (Ky.1968) (*citing* 76 A.L.R.2d 9, 37, 1961 WL 13170 (1961)). *King v. Ford Motor Co.*, 209 F.3d 886, 895 (6th.Cir.2000). "Kentucky law imposes a general duty on manufacturers and suppliers to warn of dangers known to them but not known to persons whose use of the product can reasonably be anticipated." *Watters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir.1990). Suppliers of a product may have a duty to warn arising out of general negligence principles if the supplier: "(a) knows or has reason to know that the [product] is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the [product] is supplied will realize its dangerous condition. . . ." *C & S Fuel, Inc. v. Clark Equipment Co.*, 552 F.Supp. 340, 347, (E.D.Ky.1982), *quoting Restatement, Second,* Torts § 388.

■ Again, we believe that the trial court properly reviewed Kentucky Kingdom's summary judgment motion to determine the existence of a genuine issue of material fact about whether or not the amusement park breached its duty to warn West of any dangers which were not obvious to riders of the Chang, but of which Kentucky Kingdom knew, or reasonably should have known. We further believe that this is a proper application of Kentucky's products liability "duty-to-warn" standard. In any event, we apply the product liability "failure-to-warn" principles set out above in our review of the trial court's award of summary judgment.

*DAUBERT AND PROGENY*

In Arguments I.C. and I.D. West argues that the trial court misapplied the principles set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny in evaluating the testimony of her expert witnesses.

Rather than recap in detail the trial court's citations to *Daubert* and its progeny, we simply note that we disagree with West's criticisms of the trial court's approach to the *Daubert* aspect of the case. Instead, we set out below the now well-established applicable *Daubert* principles.

Kentucky Rules of Evidence (KRE) 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise....

 Federal Rules of Evidence 702 is identical to the Kentucky Rule. In *Daubert*, the Supreme Court interpreted Rule 702 in the context of the admissibility of scientific expert testimony. The Court stated:

> "Faced with a proffer of expert scientific testimony ... the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically

valid and of whether that reasoning or methodology [3] properly can be applied to the facts in issue."

*Daubert*, 509 U.S. at 592–93, 113 S.Ct. at 2796 (footnotes omitted).

The *Daubert* decision established a procedure whereby the trial court would act as a gatekeeper by ensuring that scientific testimony would be admitted only if it is both relevant and reliable. It stated that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597, 113 S.Ct. at 2799.

The *Daubert* decision included a list of factors the trial court may consider in reaching its determination:

> Whether a "theory or technique ... can be (and has been) tested;"
>
> Whether it "has been subjected to peer review and publication;"
>
> Whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation;" and
>
> Whether the theory or technique enjoys "general acceptance" ... within a "relevant scientific community."

*See Daubert*, 509 U.S. at 592–94, 113 S.Ct. 2786 at 2796–97, 125 L.Ed.2d 469.

In *Mitchell v. Commonwealth*, 908 S.W.2d 100, 101–02 (Ky.1995) (*overruled in part on other grounds by Fugate v. Commonwealth*, 993 S.W.2d 931, 937 (Ky. 1999)), the Kentucky Supreme Court adopted the *Daubert* standards and procedures for screening the admissibility of scientific testimony, which, again, assigns to the trial court the role of "gatekeeper."

---

**3.** This "gatekeeping" role of the trial court has been described as having the objective of banishing "junk science" evidence from the courtroom. *Elsayed Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063 (9th Cir.2002); *Ragland v. Commonwealth*, 191 S.W.3d 569, 575 (Ky.2006).

In *Kumho Tire Company v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court of the United States extended the *Daubert* process to all expert testimony relying upon technical or other specialized knowledge. Our Supreme Court adopted *Kumho Tire* in *Goodyear Tire and Rubber Company v. Thompson*, 11 S.W.3d 575 (Ky.2000).

■■■ The trial court's *Daubert* ruling is reviewed using an abuse-of-discretion standard. *Goodyear Tire* at 577–78. Moreover, "[t]he trial court must have the same kind of latitude in deciding *how* to test an expert's reliability . . . as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho Tire*, 526 U.S. at 152, 119 S.Ct at 1176 (emphasis in original). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson* at 581.

### AVERY TESTIMONY

In Argument I.E.2., West contends that the trial court erroneously applied *Daubert* to the testimony of her amusement park safety expert, William Avery. With the standards and principles set out in the preceding sections of this opinion in mind, we now turn to this argument.

In its June 21, 2007, order the trial court determined that Avery qualified as an expert witness. The record discloses that Avery has worked in amusement park safety for approximately thirty years, serving as Safety Manager at Busch Gardens, Corporate Safety Specialist at Anheuser–Busch Companies, Director of Risk Management at SeaWorld Parks, Inc., and as Vice President of Safety, Security, Rides and Maintenance at Boardwalk and Baseball, Inc. before he opened his own consulting business in 1990. He has inspected amusement rides and devices, written policy and loss control surveys at entertainment locations, published articles on amusement park safety and made public and private appearances on amusement park safety. The trial court has broad discretion in qualifying a witness as an expert. Kentucky Kingdom does not challenge Avery's qualifications as an expert on amusement park safety, and thus we accept for purposes of our review that Avery is an expert in the area of amusement park ride safety.

As previously noted, however, the trial court, acting pursuant to its gatekeeping function, determined that Avery's proffered expert testimony was inadmissible under the standards established in *Daubert* and its progeny. In its June 21, 2007, order the trial court explained its reasoning as follows:

> Considered in a light most favorable to the Plaintiff, Mr. Avery's opinions, at best, support a negligent failure to warn claim. . . .
>
> Whether [Kentucky Kingdom] was negligent in failing to warn its guests as to the potential for head injuries in riding the Chang is clearly a matter that requires expert testimony. See KRE 702[.] . . .
>
> In reaching his opinion, Mr. Avery testified that he reviewed the [Kentucky Kingdom] ride standard operating procedures and a 1996 standard maintenance manual for roller coasters at [Kentucky Kingdom]. Though he did not rely on them in reaching his opinion, he also reviewed the ASTM standards on reasonable ride and devices. He also reviewed Ms. West's testimony about her experience on the ride. He has been involved or testified in some thirty roller coaster cases as a Plaintiff witness and has never appeared as a defense

witness. He testified that he was involved in a "stand-up" roller coaster case in which a person was ejected from the ride; that case settled.

Mr. Avery visited the park and rode the Chang one time. He testified to observing the ride for a period of time, then taking photographs and video of the ride in motion. He did not speak to any park employees about the ride, nor did he follow up on anything he observed that day. He states that his opinion is based on his experience riding thousands of roller coaster rides in his life giving him an understanding of body motion and effect in similar rides. When asked whether [Kentucky Kingdom] could operate the ride any differently that it does, he answered, "Well, no, you cannot vary from what the manufacturer's recommendation are [sic] . . . But when you have operational knowledge [that the ride produces intense head-banging], you can warn the general riding public of what they may or may not experience. At least let them make an informed decision of whether they want to expose themselves to that kind of intensity." Avery Depo. at 52. Mr. Avery conceded that he did not know with what force a given rider's head would hit the padded harness on the Chang during the ride, but he concluded that the hit could result in an injury: "The rides I've been on and knowing the ride history on a lot of the other rides— I don't have the ride history on this particular ride—it was never produced—to understand what they may or may not have documented. But from— from the level and intensity of what I was experiencing, I believe that it has the potential to result in injury to a certain percentage of the population under the right conditions." Avery Depo. at 48. He also conceded that he had no studies and knew of no studies that quantified the amount of force it took to cause Ms. West's injuries; he stated that his opinion was based on a "you-know-it-when-you-see-it type of thing," and "understand it and understand that—that—that body motion can result in—in trauma at some level."

The Court has considered the proffered testimony and finds it inadequate under any reading of *Daubert, Kumho,* or *Goodyear* to withstand [Kentucky Kingdom's] motion for summary judgment. It is undisputed that Mr. Avery's ride on the Chang and his resultant theory of liability was [sic] not subjected to testing, peer review or publication. There is no error rate or control technique involved in this case, nor does Ms. West provide evidence that formulating an opinion on the sufficiency of a ride's warning by going on a single roller coaster ride enjoys general acceptance within the relevant scientific or technical community.

The lack of *Daubert* factors is not always fatal, as was seen in the Ratliff case, supra. There, the Supreme Court held that the doctor's own experience, coupled with published reports concerning cigarette burns, was enough to allow her opinion into evidence. Here, Mr. Avery's own experience, which is extensive, is supported by no published studies or reports of any kind. Moreover, his investigation into the Chang leaves much to be desired: he took no measurements, made no height comparisons and provided no studies or literature concerning stand-up coaster versus sit-down coaster head injures. He has no information about how much force is required to inflict a head injury; he merely states that bodies in motion striking an object can lead to injuries. Simply put, Ms. West has nothing other than Mr. Avery's word that the Chang is

dangerous and required a stronger warning. The Court is inclined to agree with [Kentucky Kingdom] that his testimony can be characterized as "ipse dixit," i.e., the opinion is based solely on the assertion of the expert himself. The "reliability" factor is simply not met in this matter, and the Court must therefore grant Summary Judgment as to Ms. West's remaining failure to warn claim.

■ We again note that we review the trial court's foregoing determination using an abuse-of-discretion standard. As demonstrated by the trial court's detailed and well-reasoned explanation of its rationale for concluding Avery's testimony is not reliable, its determination was not an abuse of discretion.

Further, a review of Avery's deposition testimony discloses that his conclusions regarding the Chang and its safety are based upon little more than his exclusively subjective opinion after having observed the ride in operation and having ridden it but once. Moreover, Avery admitted that he has never formally analyzed, documented, and researched roller coaster rides; but, rather, he premises his opinion in this case merely upon having ridden them on numerous occasions. With respect to this particular ride, Avery was unable to state the acceleration rate, speed, or g-forces generated during the ride. Nor did he do any calculations or produce any other documentation in support of his conclusion that Kentucky Kingdom's warning was inadequate. And, as noted by the trial court, he admitted that his opinion was substantially based upon an "I–know–it–when–I–see–it" analysis.

*Goodyear Tire* well illustrates the broad discretion granted to the trial court in exercising its gatekeeping duties in determining whether specialized-knowledge testimony is admissible. In *Goodyear Tire,* the plaintiff was injured while changing a multipiece tire rim manufactured by Goodyear when the tire exploded. In support of his theory that Goodyear had negligently designed the rim, the plaintiff retained Dr. O.J. Hahn. Dr. Hahn held a B.S. degree in engineering physics, an M.S. in nuclear engineering, an M.A. in mechanical engineering, and a Ph.D. in mechanical engineering from Princeton University. Since 1973 he had taught engineering at the University of Kentucky and since 1984 had been a professor of mechanical engineering at UK. Among the courses he has taught at UK were engineering safety and engineering experimentation. He was a member of the Society of Automotive Engineers, American Society for Quality Control, American Nuclear Society, American Society of Mechanical Engineers, American Chemical Society, and Kentucky Health Physics Society. He had authored or coauthored many published articles in various areas of engineering and was a member of several honorary societies for engineers. His research specialization was in safety of mechanical systems. He had testified as an expert witness on multipiece rims in over one hundred cases in forty-nine states and had studied such rims for over twenty-six years.

Dr. Hahn provided an opinion in the case that the rim was negligently designed and pointed to alternative rim designs as proposed in a 1938 patent, a 1953 patent, and the technology used in the wheel assemblies of B–52 aircraft. In excluding Dr. Hahn's testimony concerning Goodyear's alleged negligent design, the trial court stated in pertinent part:

[T]he court finds the proffered expert lacking. . . . The problem I have with the testimony that is proffered by the plaintiffs [sic] can Dr. Hahn's theory or technology be tested? Apparently it can. Has it been subject to peer review and publication? It has not. Further, Dr.

Hahn offered no proof of any widespread acceptance of his theory or technology. An inference or assertion in a design case it seems to this court must be derived by some kind of scientific methodology. Engineering is not an art. It is a science. It involves principles of physics. It involves high mathematics. It involves scientific testing methodology. None of that was offered with respect to the inquiry today regarding either the expert or his theory and technology in this case.

*Goodyear Tire*, 11 S.W.3d at 581.

The Supreme Court concluded that upon application of the abuse-of-discretion standard, "it is clear that the trial judge did not abuse her discretion in excluding Dr. Hahn's testimony." *Id.*

Upon comparing Dr. Hahn's qualifications and analysis in forming his opinions in *Goodyear* with those of Mr. Avery in the present case, we can only conclude that if it was not an abuse of the trial court's discretion to exclude Dr. Hahn's testimony in *Goodyear*, it clearly was not an abuse of discretion to exclude Mr. Avery's testimony in this case.

Upon the exclusion of Avery's expert testimony, Kentucky Kingdom is entitled to summary judgment on West's failure-to-warn claim. Absent expert testimony, a jury would have no basis for determining that the warning given by the appellee was inadequate.

### NICHOLS TESTIMONY

In Arguments I.E.1. and I.E.2., West argues that the trial court erroneously applied *Daubert* to the opinion stated in the affidavit of Dr. George Nichols. Dr. Nichols is a former Chief Medical Examiner for the Commonwealth and is an expert in the area of biomechanics. In his March 26, 2007, affidavit, in relevant part, Nichols stated as follows:

. . . .

3. I personally observed the "CHANG" ride at Kentucky Kingdom. It is also my opinion that the head banging described by Mr. Avery in his report and my observation of the ride caused the injuries to Ms. West described in Dr. Cotugno's medical report and in my opinion letter dated August 11, 2005.

4. It is also my opinion from my experience in biomechanics as Kentucky's Chief Medical Examiner that the head banging and stresses described by Mr. Avery and from my observation of the "CHANG" ride can cause head injury to patrons riding the "CHANG" such as those injuries received by Ms. West which poses an unreasonable risk of harm to patrons while riding the "CHANG."

█ The trial court did not specifically address Dr. Nichols' affidavit in its June 21, 2007, order. However, we note that a crucial underpinning to his opinion is Avery's opinion which, as previously discussed, has been properly excluded by the trial court under *Daubert.* Moreover, it is clear that Dr. Nichols' area of expertise is not broad enough to encompass amusement park safety; as such the formation of the opinion expressed above—which is based upon the inadmissible testimony of Avery and the affiant's mere observation of the ride—is not sufficient to defeat summary judgment.

█ Moreover, as the other medical testimony which attributes West's injury to the ride is based merely upon her anecdotal representations of her ride experience—and not the personal knowledge of the physicians—we believe this testimony, too, is inadequate to defeat summary judgment. Further, Kentucky Kingdom is not strictly liable as an insurer of the safety of its invitees, *Sidebottom v. Aubrey,* 101

S.W.2d at 213, and the medical testimony does not establish that Kentucky Kingdom breached any duty owed to West upon her failure-to-warn claim.

## SUMMARY

To summarize, the trial court properly granted summary judgment upon West's theories of ordinary negligence in the operation of the Chang, products liability/design defect, and products liability/manufacturing defect based upon a complete lack of evidentiary support.

After dismissal of the foregoing, the trial court properly concluded that the only surviving claim with any evidentiary support at all was the failure-to-warn claim. As discussed herein, the trial court did not abuse its discretion in excluding the testimony of West's amusement park safety expert, William Avery, pursuant to *Daubert*. And upon exclusion of that testimony, West has not shown there to be a genuine issue of material fact on her failure-to-warn claim as there is no evidence that Kentucky Kingdom breached its duty to warn West of unknown dangers under either a premises liability or a products liability theory.

## CONCLUSION

For the foregoing reasons the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.