RENDERED: MARCH 28, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0027-MR

MORRIS DAVIS          APPELLANT

APPEAL FROM HOPKINS CIRCUIT COURT
v.     HONORABLE CHRISTOPHER BRYAN OGLESBY, JUDGE
ACTION NO. 21-CI-00537

ALICE OLIVER          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND KAREM, JUDGES.

CALDWELL, JUDGE: Morris Davis ("Davis") appeals from the Hopkins Circuit Court's denial of his motion for a missing-evidence instruction and granting of summary judgment in favor of Alice Oliver ("Oliver). This is a negligence case where Davis alleged Oliver supplied him with a dangerous and defective ladder. We affirm the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Davis, a retired carpenter, met Oliver, a long-haul truck driver in August of 2020, at her home in Dawson Springs, Kentucky to discuss the repair of her roof. Davis went to Oliver's home with a mutual acquaintance whose roof he had repaired and through whom Oliver had contacted him. On that day, Oliver let Davis use a ladder from her storage shed to climb onto the roof for inspection. In later statements, Davis and Oliver would both recall the ladder was one made by Little Giant Ladder Systems ("Little Giant"). After inspection of the roof, Davis returned the ladder to Oliver's storage shed. The price of $15 per hour was agreed upon for the necessary work and Davis advised he would return.

Later, on August 31, 2020, Davis returned for the repair. Oliver was home inside but Davis did not see or speak with her before retrieving the Little Giant ladder from the storage shed to begin work. When placing the ladder for access to the roof, Davis chose the same location he had for the inspection. As he was climbing the ladder, after taking about four steps up, Davis felt the ladder collapse and he fell. Hearing Davis's fall, Oliver came from inside her house. She observed the top half and bottom half of the ladder were in separate pieces on the ground. Davis was taken to a medical provider and treated for injuries to his arm.

A letter of representation dated April 30, 2021, from Davis's attorney was sent to Oliver by certified mail. The letter requested she preserve the ladder.

The letter additionally requested an opportunity to inspect the ladder. A response to Davis's attorney from a claims adjuster, dated May 5, 2021, stated:

> In regards to your spoliation issue, the involved Little Giant Ladder is still in the possession of Ms. Oliver. Please contact our office to schedule a date and time for an inspection. We would appreciate the inspection being completed within the next 30 days, if possible.

For reasons not apparent from the record before us, no inspection occurred.

On August 7, 2021, Davis filed an action in Hopkins Circuit Court against Oliver for negligence and Little Giant for a number of product liability claims. Little Giant first moved to dismiss Davis's claims against it on April 12, 2022, alleging Davis had failed to maintain and produce the ladder for inspection. Davis cited to outstanding discovery in response and requests to Oliver for information about the ladder. The trial court denied the motion, granting time for discovery on the matter.

Interrogatory responses subsequently served by Oliver indicated she was no longer in possession of the ladder. One response indicated that after Davis's accident it had been "put back in the building and we didn't use it again. It was taken from the building sometime after and not returned." In another response to an interrogatory inquiring whether Oliver had disposed of the ladder, she responded: "I did not dispose of the ladder. It was 'borrowed' and not returned. I don't know who took the ladder."

Little Giant filed a renewed Motion to Dismiss on July 29, 2022. Oliver filed her own Motion to Dismiss on August 4, 2022. Davis filed a Motion *in Limine* for an Adverse Inference Jury Instruction on August 23, 2022. Davis argued that, despite receiving a preservation letter from counsel, Oliver had failed to preserve the ladder. Davis also cited to this issue in responses to both defendants' motions. The trial court denied both Davis's and Oliver's motions but expressed willingness to revisit either following discovery, should the evidence render them appropriate. However, all claims against Little Giant were dismissed by an order of the trial court on August 30, 2022. That order is not subject to the current appeal.

A deposition of Davis occurred on March 2, 2023. Counsel for Davis deposed Oliver on May 1, 2023. Oliver filed a motion for summary judgment with the trial court on August 22, 2023. On October 6, 2023, Davis filed a Renewed Motion *in Limine* for an Adverse Inference Jury Instruction. After hearing oral arguments, the trial court denied Davis's motion and granted summary judgment to Oliver on December 5, 2023. This appeal follows. Additional facts will be developed as necessary.

## ANALYSIS

Davis argues the trial court erroneously determined the evidence did not support a missing-evidence instruction. Furthermore, Davis alleges the trial

court erred in granting summary judgment to Oliver as there were genuine issues of material fact appropriate for jury determination. We find no error in either decision.

## Standard of Review

For a trial court's determination of whether to grant a missing evidence instruction, we review pursuant to the abuse of discretion standard. *University Medical Center, Inc. v. Beglin*, 375 S.W.3d 783, 790-91 (Ky. 2011).

In reviewing the trial court's grant of summary judgment, we must determine "whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Powers v. Kentucky Farm Bureau Mutual Insurance Company*, 694 S.W.3d 361, 374 (Ky. 2024). In so doing, we keep in mind that the trial court "must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor." *Id.* Since summary judgment does not entail the trial court's making findings of facts but simply determining whether genuine issues of material fact exist based on the record, appellate courts do not defer to "the trial court's assessment of the record or its legal conclusions." *Id.* In other words, we review a trial court's grant of summary judgment *de novo* – meaning without any deference. *Ashland Hospital Corporation v. Darwin Select Insurance Co.*, 664 S.W.3d 509, 516 (Ky. 2022).

## I. Missing Evidence Instruction.

We will first address Davis's argument that the trial court erred in denying his motion(s) *in Limine* for an Adverse Inference Jury Instruction. Davis cites to *Ordway v. Commonwealth* that "[t]he missing evidence instruction should be given when material evidence within the exclusive possession and control of a party, or its agents or employees, was lost without explanation or is otherwise unaccountably missing[.]" 391 S.W.3d 762, 793 (Ky. 2013). Oliver's sole possession of the ladder was established by her own admission, Davis argues, and her inability to produce it was without reasonable explanation. Oliver offered multiple possibilities for how the ladder went missing and ultimately conceded she did not know what happened to the ladder, Davis argues. *Id*. Additionally, Davis argues, his having served Oliver with a preservation letter prior to litigation and her loss of the ladder in such a manner established her bad faith, even if he *was* unable to produce any affirmative evidence that the loss was caused by behavior more blameworthy than ordinary negligence.

The depositions of both Davis and Oliver were submitted to the trial court. For evidence in support of his arguments before the trial court, Davis relied almost exclusively on the deposition of Oliver. At her deposition, Oliver testified consistently with her interrogatory responses regarding her losing possession of the ladder. Additionally, she testified that the shed where the ladder had been stored

could be locked but that she had not done so. Oliver testified her work as a long-haul trucker kept her away from her home for long periods of time and the ladder had gone missing at a time when she was on the road. She said she had never seen the spoliation letter sent by Davis's counsel and the signature for the certified letter appeared to be that of her nephew who had been living with her at the time. She testified of learning from her nephew that some "workmen" had been on the premises with access to the shed on another occasion while she was away. She believed it was at this time that the ladder had disappeared and that one of the workmen had likely come into possession of it. However, she was unsure as to the identity of anyone she could state with certainty who had used or "borrowed" the ladder. Davis emphasizes the following testimony:

> Q. Okay. Are you certain that they used the ladder when they came?
>
> A. No. I wasn't here. I wasn't there.
>
> . . .
>
> Q. So if I were to ask you if they used that ladder or not, you would just say you don't know?
>
> A. I don't know.
>
> Q. It's an assumption at that point?
>
> A. (Witness nods.)

Davis insists this concession brings the case in the scope of *Ordway* and required the trial court to approve a missing evidence instruction. A primary difficulty with Davis's argument is that it overlooks completely a trial court's discretion when considering a missing evidence instruction. As our Supreme Court's most recent consideration of the missing evidence instruction held, the matter of missing evidence instructions carries "a flexible standard that grants wide discretion to the trial court." *Norton Healthcare, Inc. v. Disselkamp*, 600 S.W.3d 696, 731 (Ky. 2020):

> [T]he trial court is within its discretion to give a missing-evidence instruction when: (1) the evidence is material or relevant to an issue in the case; (2) the opponent had "absolute care, custody, and control over the evidence;" (3) the opponent was on notice that the evidence was relevant at the time he failed to produce or destroyed it; and (4) the opponent, "utterly without explanation," in fact failed to produce the disputed evidence when so requested or ordered. In so finding, we [noted] . . . that "nonproduction alone 'is sufficient by itself to support an adverse inference even if no other evidence for the inference exists[.]'"

*Id.* at 731 (citations and footnotes omitted).

At the hearing on the matter, before denying Davis's motion, the trial court noted that a request for an adverse inference instruction would typically be requested or considered during trial, with considerable evidence to support the motion. The trial court contrasted that situation with the record before it, with a clear lack of any material evidence that indicated Oliver had done anything

-8-

deliberately with the ladder. Where the record shows that the evidence was lost as a result of mere negligence, "the missing-evidence instruction should not be given[.]" *Disselkamp*, 600 S.W.3d at 730 (citations and quotations omitted). Where it is established mere negligence or inadvertence caused the loss, this also establishes an absence of bad faith. *Beglin*, 375 S.W.3d at 791 (citing *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009)).

We cannot agree with Davis's contention that Oliver's negligent loss of the ladder, subsequent to his putting her on notice and prior to filing suit, itself established bad faith and his entitlement to an adverse inference instruction. This is simply not consistent with Kentucky law. "[W]e do not agree . . . that a party is always entitled to a missing-evidence instruction, . . . in all cases where evidence is not available after the party responsible for the evidence was put on notice of potential litigation." *Disselkamp*, 600 S.W.3d at 733. The caselaw relied upon by Davis is in fact clearly in line with this principle. The *Ordway* Court makes clear: "[W]hen it is established that the evidence was lost due to mere negligence or inadvertence, which, in effect, negates a finding of bad faith, the missing instruction should not be given." 391 S.W.3d at 793 (citing *Beglin*, 375 S.W.3d at 791; *Mann*, 588 F.3d at 1310).

The trial court indicated its decision was based in large part on Davis's failure to produce any evidence of Oliver's intentionally losing possession

of the ladder. Before denying Davis's motion, the trial court indicated it had considered the depositions of the parties. We certainly cannot say, as a matter of law, that the trial court was required to conclude from Oliver's testimony the ladder was "lost without explanation or is otherwise unaccountably missing[.]" *Ordway*, 391 S.W.3d at 793. Certainly, considering the trial court's wide latitude, we cannot say the trial court abused its discretion here in declining to grant a missing-evidence instruction.

## II. Motion for Summary Judgment

When granting summary judgment, the trial judge indicated he found "the only way the defendant could be liable is if she knew there was a defect with the ladder and there's no evidence of that." Davis's central argument is that the absence of the ladder itself created an issue of fact as to whether Oliver knew of a defect.

Oliver argues here, as she did to the trial court, that summary judgment was appropriate as Davis has presented no material evidence of any defect in the ladder. Furthermore, Oliver argues, no Kentucky law supports Davis's position that a missing-evidence instruction alone can overcome summary judgment.

In his reply brief, Davis asserts he does not attempt to rely upon a missing-evidence instruction alone to overcome summary judgment as Oliver's

testimony is sufficient to create a material issue of fact as to whether she lost possession of the ladder in bad faith. Still, this argument is overlapping with his argument regarding the missing-evidence instruction:

> The Trial Court erred in finding that there was no bad faith on the part of Defendant on its own. The Trial Court's duty was to determine whether the Plaintiff was entitled to the adverse inference jury instruction and properly word said instruction. However, the determination of whether the Defendant acted in bad faith, especially in light of her inability to explain the loss of the ladder when it was in her sole possession, is a decision for the jury.

This argument focuses upon the alleged breach by Oliver of her duty *to preserve evidence* after his accident.

However, to overcome summary judgment, Davis was required to point to evidence indicating a material issue of fact for his negligence claim. A negligence action requires proof of: (1) a duty on the part of the defendant; (2) a breach of that duty; (3) a consequent injury, which consists of actual injury or harm; and (4) legal causation linking the defendant's breach with the plaintiff's injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003).

Duty presents a question of law. "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.*, 724 S.W.2d 228,

229 (Ky. App. 1986). To the trial court, the parties argued the matter of duty in terms of Kentucky premises liability law. While general negligence law requires the existence of a duty, premises liability law supplies the nature and scope of that duty. *Lewis v. B & R Corporation*, 56 S.W.3d 432 (Ky. App. 2001).

Oliver argues Davis had the status of an independent contractor and her duty to him was only to warn of dangers known to her.[1] When oral arguments on the underlying motions were heard, the trial judge indicated he found Davis's status was an independent contractor before stating that "the only way the defendant could be liable is if she knew there was a defect with the ladder[.]" To this court, Davis makes no argument the trial court erred in determining his status to be that of an independent contractor. Furthermore, Davis made no specific argument to the trial court his status was not that of an independent contractor at the time of his fall.

Instead, Davis argued the status of independent contractor made no difference to his theory of liability as he alleged Oliver failed to warn him of a defect in the ladder. More particularly, Davis alleged, Oliver had failed to disclose

---

[1] In a premises liability claim, a landowner is not liable to an independent contractor for injuries sustained from defects or dangers that the independent contractor knows or ought to know of. *Owens v. Clary*, 256 Ky. 44, 75 S.W.2d 536, 537 (Ky. 1934), *abrogated on other grounds by Ralston Purina Co. v. Farley*, 759 S.W.2d 588 (Ky. 1988). Only when "the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know," is the landowner liable for the contractor's injuries absent a warning. *Id*. at 537.

-12-

notice of a product recall she had received. This, he alleged, gave her knowledge of a dangerous condition or defect in the ladder she provided to Davis and she breached her duty to warn him of a dangerous defect she owed him as an independent contractor.

Davis's complaint alleged that he "was an invitee and/or licensee on the subject premises" and that Oliver had "negligently failed to inspect and maintain the area in a safe condition." In paragraphs more directly related to the ladder, Davis alleged Oliver had "failed to inform and/or warn [him] . . . of the dangerous and unsafe condition." He also alleged he "was not likely to discover the dangerous and unsafe condition prior to using the ladder." It is clear Davis's allegation is that Oliver provided him with an instrument she knew was dangerous and unsafe. Outside of general statements in his complaint, Davis makes no allegation the condition of the premises itself caused his fall.

In the context of a products liability claim, we have recognized that "Kentucky law imposes a general duty on manufacturers *and suppliers* to warn of dangers known to them but not known to persons whose use of the product can reasonably be anticipated." *West v. KKI, LLC.*, 300 S.W.3d 184, 192 (Ky. App. 2008) (quoting *Watters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir. 1990)) (emphasis added). Where a party alleges they were injured not "by reason of any defect in the premises, but by reason of a defect in a dangerous instrumentality furnished"

-13-

by the defendant, longstanding Kentucky precedent has recognized "[t]he principle to be applied is set forth in the Restatement (Second) Torts, § 388[.]" *Lloyd v. Lloyd*, 479 S.W.2d 623, 625 (Ky. 1972); *see also Burke Enterprises Inc. v. Mitchell*, 700 S.W.2d 789, 793 (Ky. 1985).

> Suppliers of a product may have a duty to warn arising out of general negligence principles if the supplier: "(a) knows or has reason to know that the [product] is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the [product] is supplied will realize its dangerous condition . . . ."

*West*, 300 S.W.3d at 192 (citing *C & S Fuel, Inc. v. Clark Equipment Co.*, 552 F.Supp. 340, 347, (E.D. Ky. 1982)) (quoting RESTATEMENT (SECOND) TORTS, § 388).

Applying the RESTATEMENT (SECOND) TORTS, § 388, Oliver had a duty to warn Davis if she knew or had reason to know of a defect in the ladder that was likely to be dangerous for Davis and where he would have no reason to realize the defect. This duty is parallel with that to warn an independent contractor of a defect or danger in the land when "the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know[.]" *Owens*, 75 S.W.2d at 537. Although we find precedent that we cannot ignore establishes that application of the RESTATEMENT (SECOND) TORTS, § 388, rather than premises liability law, was appropriate under the facts of this case, the trial

-14-

court did not err in finding that "the only way the defendant could be liable is if she knew there was a defect with the ladder and there's no evidence of that."

Davis's central argument focuses on inferences which might be drawn from an alleged breach by Oliver of her duty to preserve evidence after his accident. From the uncertainty of her testimony, he alleges, the jury might have inferred that she in fact disposed of the ladder in bad faith. From this, he argues, the jury might have further inferred she had received notice of the ladder being recalled for a defect. However, multiple other inferences would still be required before a jury might reach a determination of liability.

At times, Davis seems to argue Oliver should be liable for having sabotaged his claims against co-defendant Little Giant. He alleges Oliver "robbed [him] of his ability to prove his product liability case" and "is now reaping the reward of having failed to comply with her duty to preserve the evidence which would have allowed Plaintiff to prove if she knew of the ladder's defect." But we agree with Oliver that there was insufficient evidence of a defect or dangerous condition in the ladder.

To overcome summary judgment, Davis was required to point to evidence indicating Oliver had breached a duty to him that *caused* his accident. *See Pathways, Inc.*, 113 S.W.3d at 88-89. The record before us demonstrates no

specific theory by Davis as to how any specific defect in the ladder caused him to fall. Davis's complaint alleged that, "[w]hile standing on the ladder, a piece(s) of the ladder failed and caused the ladder to collapse." However, elsewhere, it does not appear Davis ever specifically alleged so much as which piece this might have been. Instead, he argued he "*may* have discovered based upon evidence of the model of the Little Giant ladder" that [Oliver] had been "informed of a defect or a recall by Little Giant ladder." (Emphasis added.) But nowhere does Davis provide even a hypothetical description of how the ladder itself might have proven Oliver received some notice of a recall. Furthermore, nothing specific was argued or identified by Davis as to how any alleged recall of Little Giant ladders was consistent with the manner of his accident.

At his deposition, Davis testified he was very familiar and experienced with Little Giant ladders, but he could identify no specific defect in the ladder that had caused his fall. He had not noticed anything wrong with Oliver's ladder before he used it. He testified he had owned two of the "same" Little Giant ladders himself and had no problems with those, but it does not appear Davis specified the model of Little Giant Ladder on which his fall occurred. Davis described the top half of the ladder coming loose from the bottom half, while leaning against the house, as the cause of the fall. However, he identified nothing more specific than that, nor did he specify any reason Oliver had to be aware of a

defect. Davis testified at one point Oliver "gave me a bad ladder I guess, I think. It could have been." However, when asked for specifics, Davis conceded he had no reason to believe she knew there was something wrong with the ladder.

At her deposition, Oliver testified she did not climb ladders and had never used the ladder herself. She did not know of anything wrong with the ladder. In written discovery she indicated she "showed him the ladder and told him he could use it if he wanted to. Also showed the safety features on ladder a few days earlier. He didn't have them engaged." After Davis fell, she described the condition of the ladder as: "[s]afety latches were not in place. The ladder was in two pieces."

Davis was not without an opportunity to develop his case. Initial motions by Little Giant seeking dismissal and to avoid responding to discovery were denied by the trial court. Little Giant was not dismissed from the case until a year after Davis filed his complaint. The record contains notice of service by Little Giant in response to discovery requests by Davis. It was more than a year later before summary judgment for Oliver was granted. Still, Davis's case depended entirely upon inferences he alleged a jury might draw from Oliver's denials of having knowledge of a defect in the ladder.

The party opposing summary judgment "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must

present affirmative evidence in order to defeat a properly supported motion for summary judgment." *O'Bryan v. Cave*, 202 S.W.3d 585, 587 (Ky. 2006) (citing *Steelvest v. Scansteel*, 807 S.W.2d 476, 481 (Ky. 1991)). "[S]peculation and supposition are insufficient to justify a submission of a case to the jury, and . . . the question should be taken from the jury when the evidence is so unsatisfactory as to . . . resort to surmise and speculation." *Id.* at 588.

At the hearing, the trial court noted Davis had admitted in his deposition that he did not know what made him fall and had no reason to think Oliver knew of anything wrong with the ladder. Viewing the evidence in a light most favorable to Davis and with all doubts resolved in his favor, he presents nothing more than the jury's potential disbelief of Oliver's testimony for evidence of her bad faith in losing possession of the ladder. Moreover, this goes only to Oliver's duty of preservation. To find a breach of duty which caused injury to Davis, speculation and supposition by the jury would additionally have been required; the evidence proffered by Davis would not support such a finding. Accordingly, we cannot say the trial court erred in granting summary judgment to Oliver.

## CONCLUSION

Having addressed Davis's arguments and finding no reversible error, we AFFIRM.

-18-

ALL CONCUR.

BRIEFS FOR APPELLANT:                    BRIEF FOR APPELLEE:

Nathan Lee Bishop                        Don A. Pisacano
Owensboro, Kentucky                      Lexington, Kentucky